[Crim. No. 8238. Second Dist., Div. One. Jan. 28, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK WELCH, JR., Defendant and Appellant.

Frank Welch, Jr., in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found Frank Welch, Jr., who had previously admitted three prior felony convictions, William Gillis and Margaret Morton guilty of second degree robbery. Only Welch appeals. He does not question the sufficiency of the evidence to support the judgment, but contends that he was not properly represented by counsel and that the lower court erred in permitting the prosecution to question him concerning prior felony convictions.

Lon McNiel was seated alone in a bar called the "Brass Rail"; he had in his possession, among other things, a wrist watch, car key, jacket and wallet containing $75. Defendant Welch, Margaret Morton and Gillis entered the bar with one Roza and Dorothy Cooper. Margaret asked McNiel to buy her a drink and for a coin to put in the juke box. They sat together and talked and drank until 6:30 p.m., left with the rest and went to three other bars drinking at each one and finally to a liquor store, and then drove to a private residence where they met two other men. During this time Margaret took McNiel's wrist watch; McNiel later asked her for it but she said she didn't know anything about it. Later, defendants and McNiel went for a ride in Gillis' Pontiac; Gillis and defendant were in the front seat, McNiel and Margaret in the back. Gillis stopped the car in the hills; he and defendant got out, talked together, and then pulled McNiel by the legs from the vehicle during which Margaret hit him over the head, neck and arms. Having pulled him out of the car, one of them held McNiel down while the other beat him. He was then dragged some distance and left on the ground; defendants entered the automobile and drove away. During the struggle McNiel's wallet was stolen; his pocket was ripped and his jacket and car key were taken from him. He walked some distance to where he received aid and contacted the police; he was taken to the Central Receiving Hospital where photographs were taken of his face and his injured right arm. Defendants were apprehended in the Pontiac in the hospital parking lot; the officer found McNiel's jacket in the vehicle. When Officer Crowder saw McNiel's wrist watch booked as part of defendant's property, he asked defendant about it; he said that the watch was his, that he bought it for $2.00 or $2.50 from an unknown person downtown two or three weeks before. He denied knowing or having ever seen McNiel. Asked about the injuries on his face, he said that he and some friends had been in a bar and upon leaving had been attacked by a "Mexican" and a fight ensued. Gillis and Margaret Morton told Officer Crowder the same story concerning the attack by a "Mexican."

For the defendants, Welch's brother testified that he was present at the alleged robbery scene; that he, Roza, Murray, Gillis and defendant left the car and while outside he heard a kind of scream and Margaret tell McNiel to leave her alone; that defendant then asked McNiel to get out of the car; that he heard Margaret scream again and went to the rear where

he saw defendant with blood on his head lying on the ground and McNiel standing over him; that he asked McNiel why he had done "this," hit him in the face and fought him on the ground until defendant, Gillis and Roza broke it up; that they left McNiel to take defendant to the hospital; and that en route Gillis dropped him, Roza and Murray off at a bar. Roza's testimony was about the same. Defendant Welch testified that he met McNiel in the Brass Rail and Gillis, Morton, Dorothy Cooper and Roza were present; that he later saw Margaret with a wrist watch which she said she took from McNiel; that he took it away from her and told McNiel he would give it back to him when he got ready to go home and sobered up; that some time later they went for a ride and finally stopped near "some kind of old buildings"; that all but McNiel and Margaret got out of the car; that he heard Margaret "hollering" and saying "leave me alone"; that he went up to the car and told McNiel to leave her alone, and grabbed him; that someone hit him with a beer bottle and he was knocked unconscious; that he did tell the officers that to which they testified but he did not then tell them the truth; and that he lied to them because he did not want to admit that he had been "up there drinking and using rest rooms." Margaret admitted the struggle but said it grew out of McNiel's attempt to proposition her. Her testimony concerning it and subsequent events was similar to that of defendant. She also said she lied to the officers. Gillis testified substantially the same as defendant and Margaret Morton.

Appellant's opening brief recites a lengthy version of what occurred based entirely upon his own testimony, and claims that McNiel was a "prejudiced" witness and that he "invited this thing, although there was no robbery." There is nothing incredible about McNiel's story; the jury, as the trier of fact, believed his testimony and rejected that of the defendants' witnesses. Viewing the whole evidence in the light most favorable to the verdict, we are satisfied that there is more than ample evidence to support the conclusion of the jury. (*People v. Daugherty,* 40 Cal.2d 876 [256 P.2d 911].)

■■■ While he now complains that during the trial he was denied the "right to effective assistance of counsel in a criminal proceeding, guaranteed by the Sixth Amendment of the Constitution" (A.O.B., p. 3), because the court permitted single counsel to represent all three defendants inasmuch as there was a "conflict of interest," in the absence of anything in the record to the contrary, we assume that during the time

defendant was before the trial court that he was satisfied with and agreeable to counsel's representation of him with the other two defendants, and that he consented to this arrangement. ▇ He was represented by private counsel of his own choice; he at no time raised any objection to him, to the manner in which he was being represented, or to the fact that counsel also represented Gillis and Margaret, nor did he ever suggest there was a conflict of interest between him and his codefendants or indicate that he desired a change of counsel. The issue he now raises was never brought to the attention of the trial court, and under the circumstances it was under no duty to ascertain whether a conflict of interest might arise. In this connection the court in *People* v. *Hall,* 178 Cal.App.2d 878 [3 Cal.Rptr. 442], stated at page 880: "Since appellant offered no suggestion during the trial that there was any conflict of interest between him and his codefendant, and since he gave no indication that he desired any change of counsel, the following language from *People* v. *Kitchens,* 164 Cal.App.2d 529, 543 [331 P.2d 127], is pertinent: 'Both defendants now argue that at some phase of the trial the court should have recognized that there was to be a conflict of interests between the two defendants and have suggested to them that one or the other get another attorney. In 14 California Jurisprudence 2d, section 156, page 393, it is stated: "The trial court is under no duty to ascertain whether or not a conflict of interest might arise between codefendants for whom the same counsel has been *appointed*; any conflict should be brought to the court's attention by objection raised by defendants or counsel." (Emphasis added.) So much more is this true of an attorney selected by the parties themselves as here, rather than one appointed by the court. Moreover, not until final argument did either of the parties see any conflict in their interests, and even then Kitchens did not ask for another attorney.' " (Pp. 880-881.)

▇ Moreover, if no adverse interest exists and none is claimed, it is permissible for a single attorney to represent more than one defendant. (*People* v. *Kerfoot,* 184 Cal.App.2d 622 [7 Cal.Rptr. 674].) Apart from generalities of what "might" or "could" occur when counsel represents more than one defendant in a criminal proceeding (A.O.B., p. 4) and the unsupported statement that "counsel turned his 'effectiveness' toward appellant's co-defendant (Gillis) because he had no prior record and was easier to defend" (R.B., pp. 4, 5), appellant has failed to point out wherein a conflict of interest

existed; and we are unable to find any such conflict in the record before us. To the contrary, it discloses a complete consistency in the testimony and defense of the three defendants. The prosecuting witness, McNiel, equally implicated all three defendants; the testimony of Margaret and Gillis, and their defense, were substantially the same as that of appellant; the three defendants made identical statements concerning the crime to the officers after their arrest; and there is no conflict of interest shown in either the prosecution's version of what occurred or that of the defense.

Appellant's last contention is that the court erred in permitting the deputy district attorney to ask him on cross-examination whether he had ever been convicted of a felony, he having admitted the prior convictions before the trial.

One of the established methods of impeaching a witness is by evidence that he previously has been convicted of a felony; and it may be done by examination of the witness himself (Code Civ. Proc., § 2051). Thus, once a defendant in a criminal proceeding takes the stand and testifies it is entirely proper for the prosecution to ask him if he has ever been convicted of a felony. In *People* v. *Linyard,* 151 Cal.App. 2d 50 [311 P.2d 57], involving a similar situation, the court said at page 54: "Defendant testified on his own behalf. In such event the prosecution may impeach by showing prior felony convictions, *even where such priors are admitted on arraignment.* When a defendant takes the stand he becomes subject to the same rules for testing his credibility as any other witness, including impeachment as provided in section 2051 of the Code of Civil Procedure. [Citations.]" (Emphasis added.)

Appellant claims that when he admitted the three prior felony convictions at the outset of the trial, the deputy district attorney told the trial judge that "no reference is made of the priors in this stage of the proceedings," precluding him from ever mentioning them again. While it is true that a defendant, by admitting the priors before trial, may avoid the bringing of evidence to prove a prior felony conviction charged against him before the jury, this is not here the situation. The question whether he had "ever been convicted of a felony" was not asked of defendant on cross-examination to prove the truth of the charge of the three felony convictions alleged in the information, but solely to impeach the defendant; and the deputy district attorney so stated. Moreover, his representation at the outset of the trial

that at "this stage of the proceedings" no reference to the priors would be made, obviously related to the circumstances as they then existed; at that time defendant had not taken the stand and he had no way of knowing that he would testify. Having done so, defendant created the opportunity for impeachment; and the questions asked of him were proper.

The purported appeals from order denying probation (*People* v. *Walters,* 148 Cal.App.2d 426 [306 P.2d 606]; *People* v. *Hall,* 178 Cal.App.2d 878 [3 Cal.Rptr. 442]), and order denying motion for a new trial *(People* v. *Eppers,* 205 Cal. App.2d 727 [23 Cal.Rptr. 222]) are dismissed.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.