[Crim. No. 4114.   Third Dist.   Feb. 17, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. VELTON WATKINS, Defendant and Appellant.

Willard L. Weddell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Christopher Longaker, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—A jury found defendants Watkins and Foster guilty of the first degree murder of Vincent Delaney. Watkins alone appeals. His codefendant, Foster, had also been charged with assault with a deadly weapon upon Jose Vargas. Prior to the murder trial, Foster pleaded guilty to the Vargas assault.

Both defendants were represented at the trial by Mr. Robert N. Chargin, Public Defender of San Joaquin County. On appeal Watkins asserts a conflict of interest between him and his codefendant preventing the public defender from

giving effective representation to both defendants and prejudicing his own defense.

Four eyewitnesses gave testimony tending to show that Watkins and Foster attacked Delaney on a Stockton city street during the early morning hours; that Foster repeatedly hit Delaney on the head with a crowbar; that Foster threatened a witness who attempted to interfere; that Delaney commenced to escape and was grabbed by Watkins; that Foster and Watkins then dragged him to a vacant lot, where Foster again struck him with the crowbar while Watkins stood by. Two of the witnesses found a policeman and directed him to the scene. They found Delaney lying face down, his head in a pool of blood, his empty wallet beside him and his pockets turned inside out. Two of the witnesses and another officer searched the neighborhood for the attackers. Nearby they saw Foster, armed with a crowbar and pursuing Jose Vargas. Foster was arrested. There was blood on the crowbar and blood on his clothing. Meanwhile the first officer, armed with a description of Watkins, found him in a nearby bar and arrested him.

Two of the eyewitnesses identified both Watkins and Foster as the assailants of Delaney. The other two were able to identify Watkins only. Vargas testified to the crowbar attack on him by Foster, as did several eyewitnesses. None of these witnesses implicated Watkins in the attack on Vargas or identified him as having been present. Evidence of the Vargas incident was apparently offered on the theory that it tended to prove Foster's identity as one of Delaney's attackers.

Both defendants took the stand. Each admitted that he had been in the neighborhood earlier and had seen his codefendant at various times during the evening. Each denied participation in the crime. Foster testified that on the night in question he had been attacked with a knife by a man whom he referred to as a Mexican; that he picked up a piece of iron in a vacant lot and was going after the Mexican with it when he was arrested. He volunteered that he had pleaded guilty to the assault upon Vargas.

In the trial court there was no request for separate attorneys. Watkins' claim of improper dual representation is raised for the first time on appeal. He urges that the public defender, fettered by his duty of loyalty to Foster as well as himself, was unable to demand from the court (a) an admonition instructing the jury that Vargas' testimony should be

disregarded in considering Watkins' guilt; (b) an admonition that Foster's testimony was binding on himself alone and should not be considered relative to Watkins; (c) an admonition that Watkins was not affected by the testimony of other eyewitnesses to the attack upon Vargas. Such admonitions, he argues, would have prejudiced the defense of Foster, while the absence of such admonitions prejudiced his own.

The People urge the rule that failure to object to joint counsel in the trial court precludes objection on appeal, citing *People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Byrd,* 228 Cal.App.2d 646 [39 Cal.Rptr. 644]; and *People* v. *Sprinkle,* 201 Cal.App.2d 277 [19 Cal.Rptr. 804]. The case has been tried and we have a record which enables us to employ hindsight to ascertain whether or not there was an actual conflict of interest. (See *People* v. *Odom,* 236 Cal.App. 2d 876, 879-880 [46 Cal.Rptr. 453].) Under these circumstances, it is preferable to forego the procedural objection and consider the contention on its merits.

■ As stated in *People* v. *Odom, supra,* 236 Cal.App.2d at page 878, the fact that a single attorney is appointed to represent multiple defendants does not mean that an individual has been deprived of his right to counsel; rather, an actual or potential conflict of interest among the codefendants must appear. The *Odom* decision assembles a useful catalog of the principal situations in which the courts have discerned conflicts of interest: ''Conflicts of interest among codefendants may arise when it would profit one defendant to attack the credibility of another [citation]; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another [citation]; when one defendant has a record of prior felony convictions and the others do not [citation]; when the defenses of codefendants are factually inconsistent [citation]; or when appointed counsel believes a conflict of interest may exist [citation].''

■ The primary issue at defendant's trial was the identity of Delaney's two assailants. Eyewitnesses identified the two defendants. Each denied participation in any such event. Neither gave an alibi which in any way involved his codefendant. The jury could separately weigh the denial of Watkins and the denial of Foster against the prosecution's identification evidence. Evidence of the Vargas affair was part of the prosecution's identification evidence, but it involved Foster only, not Watkins. The Vargas incident had no bearing upon Watkins' identity as one of Delaney's assailants. None

of the witnesses to the Vargas affair, including Foster, implicated Watkins; hence there was no occasion for admonishing the jury against considering their testimony in weighing Watkins' guilt. The court would have been justified in refusing such an admonition, even if counsel had requested it.

There was no inconsistency between the stories of the two defendants and no conflict in their separate denials. There was no occasion for one defendant to challenge the credibility of the other. The jury could weigh the credibility of each defendant independently.

Thus, as we check the present case against the conflict of interest situations enumerated in *People* v. *Odom, supra,* we find no occasion for one defendant to attack the credibility of another; no restriction of defense counsel's summation stemming from the possibility that an argument favoring one client might hurt the other; no factual inconsistency in their defenses; no expression by defense counsel of a potential or actual conflict of interest.

It does appear, however, that evidence of Foster's plea of guilty to the assault upon Vargas (in a sense, his prior felony conviction) came before the jury. The statement in the *Odom* case that a conflict of interest appears when one of two defendants has a prior felony conviction stems from *People* v. *Douglas,* 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]. There defendant A had a record of prior felony convictions while defendant B did not. An attorney representing both defendants could not call A to testify without risking his impeachment; could not keep A off the stand and call B to testify without having the jury draw inferences against A. Thus his joint representation hampered his tactical decisions. Here the tactical situation was much different. Foster's attack upon Vargas was before the court as independent evidence. Even though it had an impeaching effect upon Foster, it was not brought in to impeach him. It was in the case whether Foster testified or not. Foster did not deny it and the fact that he had entered a plea of guilty was an inconsequential element in counsel's tactical decision to call him to testify.[1]

There being no conflict of interest between Watkins and his

---

[1]At this point we note on page 28 of the respondent's brief a statement that Foster denied attacking Vargas. To the contrary, the reporter's transcript (pages 1070-1072) demonstrates that Foster admitted going after Vargas with a crowbar.

codefendant, Watkins was not deprived of the effective assistance of counsel.

Defendant urges that defense counsel's alleged inability to ask for an instruction limiting evidence of the Vargas incident to Foster alone was compounded by the trial court's refusal to give CALJIC instruction No. 39 "as requested by the Public Defender." The rejected instruction appears in the clerk's transcript as part of a group of instructions requested by the People, not defense counsel, and rejected by the court. The court did instruct the jury as follows:

"Evidence was offered in this case for the purpose of showing that the defendant, Foster, committed another crime than the one of which he is accused, and for which he is on trial in this action.

"Such evidence was received for a limited purpose only: Not to prove distinct offenses, or continual criminality, but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty of the crime charged against him in this action.

"You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case.

"The value, if any, of such evidence depends on whether or not it tends to show, One: The identity of the person who committed the alleged crime in question in this case, if he [*sic*] was committed; Two: That the defendant was familiar with or possessed the means alleged to have been used in the commission of the crime of which he is accused in this action."

The quoted instruction conveyed to the jury the unmistakable direction that evidence of the Vargas incident was received for a limited purpose only, that such purpose had to do with the defendant Foster and that the jurors were not permitted to consider it for any other purpose. After receiving this instruction, the jury could not reasonably weigh evidence of the Vargas incident in relation to the guilt or innocence of appellant Watkins. If there was error in the court's rejection of CALJIC 39, it was not prejudicial in view of the quoted instruction. We fully agree with the People's contention that the quoted instruction adequately protected Watkins' interests.

The court instructed the jury on first degree premeditated murder, first degree felony-murder and second degree murder.

Defendant contends that the court erred in not instructing the jury on manslaughter, but does not specify whether he is arguing for voluntary or involuntary manslaughter instructions or both. No such instruction was requested by the defendant's trial counsel. There was no evidence whatever that the killing was either voluntary manslaughter (i.e., committed in a sudden quarrel or heat of passion) or involuntary manslaughter (committed under any of the circumstances described in Pen. Code, § 192, subd. 2). ▮ In the absence of any evidentiary basis for a conviction of manslaughter, the court was not required to instruct on that subject. (*People* v. *Sutic,* 41 Cal.2d 483, 493 [261 P.2d 241].)

▮ Next defendant urges the absence of any evidentiary support for the instruction on premeditated murder. The evidence pointed most strongly toward a killing committed in the perpetration of an armed robbery. Yet it also formed the circumstantial basis for an inference that there had been a deliberate design to inflict death upon the victim. Witnesses had testified that Foster struck successive blows upon the victim's head with a crowbar, that after being interrupted both defendants dragged the victim to a vacant lot, where Foster continued to strike him with the crowbar. The character of the weapon and the location of the blows upon a vulnerable part of the victim's body were also before the jury. Thus there was a substantial body of circumstantial evidence from which the jury could reasonably infer (a) that both defendants conceived a deliberate purpose, although briefly held, to kill Delaney, or (b) that Foster had conceived such a purpose and Watkins, as his accomplice, was equally liable. *People* v. *Morris,* 174 Cal.App.2d 193 [344 P.2d 333], cited by the People, presented an analogous occasion, in which an aggravated and continuing assault upon the deceased formed the circumstantial evidence of a premeditated killing.

Finally, defendant urges the absence of evidence to establish his guilt beyond a reasonable doubt. ▮ The test on appeal is not whether guilt has been established beyond a reasonable doubt but whether there is substantial evidence to support the conclusion of the fact trier. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].) The preceding discussion demonstrates the presence of substantial evidence from which the jury could reasonably infer premeditated murder. The

same evidence, plus the empty wallet and turned-out pockets, forms a body of substantial evidence justifying the verdict as one resting on the felony-murder rule.

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 12, 1967.