[Crim. No. 13270.   Second Dist., Div. Five.   Dec. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. NICK GREGORY BAKER et al., Defendants and Appellants.

Donald F. Roeschke, under appointment by the Court of Appeal, Lemaire, Mohi & Morales and Frank C. Morales for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Both Baker and Villapando were convicted of possession of heroin. (Health & Saf. Code, § 11500.) Trial

was to the court. Pursuant to stipulation the court was permitted to read and consider the transcript of the preliminary hearing. Additional evidence was produced by the defendant Baker.

Officer Edgerton, who was on a motorcycle, saw defendants in a car, heading west on Union in Norwalk. It was dark and the headlights of the car were on, but obviously defective. The officer flashed his lights and sounded his horn to stop defendants' car. As it came to a stop Villapando, the passenger, "bent over in the seat and partially disappeared from [Edgerton's] view." When Edgerton looked into the vehicle he could not see any "weapons or anything." Asked to produce his driver's license, Baker said either that it was suspended or that he had never had a license.

Edgerton asked Baker to step out of the car and patted him down for concealed weapons. Villapando stayed in the car at first, but later was also ordered out. The car was then searched. A "hype kit" was found under the driver's seat "on the left side of the transmission hump, right against the hump." Edgerton had thought that the package might contain contraband because "of the suspect's [sic] unusual and peculiar habits, they appeared to be unsteady, et cetera . . ." Another officer later found a plastic sack, containing eight balloons filled with heroin on the ground near the right front fender of the car. At one point during the investigation Baker regurgitated a balloon which also contained heroin. Several days later, after a proper warning, Baker admitted that the "kit" was his and that when the car was stopped he had swallowed a balloon which had been in his pocket. He denied any knowledge of the eight balloons.

At the trial Baker testified that he had thrown the sack with the eight balloons out of the right front window as he pulled the car to a stop. The kit was his. When Villapando reached under the seat it was only to retrieve an ice bag which Villapando had dropped. Villapando was the owner of the car, but Baker was driving because Villapando had a black eye and could not see too well.

Villapando had been convicted of violations of section 11500 of the Health and Safety Code in 1957 and 1960.

At the trial both defendants were represented by the same public defender.[1] It is now claimed that it was a denial

---

[1] At his motion for a new trial and at the time of the sentence Villapando was represented by private counsel.

of the defendants' constitutional rights (*Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]; *Glasser* v. *United States,* 315 U.S. 60 [86 L.Ed. 680, 62 S.Ct. 457]; *People* v. *Douglas,* 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]; Cal. Const., art I, § 13) not to have appointed separate counsel for them. No request for separate representation was made in the trial court. However, in *People* v. *Chacon,* 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106] it was held: "If defendants were denied the right to effective representation of counsel, we cannot presume that the right was waived by a failure to request separate counsel. The court did not advise them of their right to separate counsel if a conflict was present, and we cannot imply from their silence a waiver of that right." (*Ibid.,* p. 774.) No such advice was given to defendants.

*People* v. *Chacon, supra,* does not, however, do away with some showing of a possibility of prejudice when there has been joint representation. It impliedly approves two decisions —*People* v. *George,* 259 Cal.App.2d 424 [66 Cal.Rptr. 442]; and *People* v. *Watkins,* 248 Cal.App.2d 603 [56 Cal.Rptr. 734]—which resulted in affirmances because no actual conflict between the defendants was found. Instead, *Chacon* appears to adopt the test enunciated in *Lollar* v. *United States,* 376 F.2d 243, 247: "'We hold, therefore, that only where ' "we can find no basis in the record for an informed speculation" that appellant's rights were prejudicially affected,' can the conviction stand. [Citations omitted.] In effect, we adopt the standard of 'reasonable doubt,' a standard the Supreme Court recently said must govern whenever the prosecution contends the denial of a constitutional right is merely harmless error. *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 386 U.S. 987, 18 L.Ed.2d 241, 87 S.Ct. 1283]. Such a standard is clearly appropriate in the present context as well, where to find prejudice is to decide that the defendant has been denied effective assistance of counsel. . . ."[2]

---

[2]We recognize that whether or not an appellate record provides the court with the basis for an "informed speculation" is entirely fortuitous. Once we permit a defendant to raise the issue of separate representation on appeal although no request therefor was made at the trial level, it seems illogical to require that the record indicate possible prejudice from the joint representation. As the court in *Lollar* recognized, all we can see is the "tip of the iceberg." (*Ibid.,* p. 246.) While it is a law of physics that a certain portion of a floating ice mass appears above the surface, it is quite possible for an appellate record to fail to show any indication of a conflict, although in fact one exists. The very vice of joint representation lies in the possibility that the conflict gets swept under the rug.

Very little seems to satisfy the *Lollar* test as the facts of that case illustrate. Lollar was an admitted homosexual who had testified that it was particularly annoying to him to be referred to as a man. Nevertheless his conviction was reversed because his codefendant, while testifying, called him "Miss Lollar," "Miss Lolly," "she" and "Sister." This, said the court, may have startled the jurors. Also, separate counsel might have decided not to permit Lollar to testify. Finally the joint attorney twice confused Lollar with his codefendant. Whether or not this actually prejudiced the outcome of the case was, admittedly, a matter of speculation, but the adoption of the *Chapman* test (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]) put the burden of showing that there was no prejudice on the prosecution.

In the case at bar it is not difficult to speculate that Baker suffered by the joint representation. Sometime between his limited confession and the trial he was apparently persuaded to exonerate Villapando, who, because of his previous convictions, faced a long term in prison. (Health & Saf. Code, § 11500.) In view of the regurgitated balloon, Baker may well have thought that he had nothing to lose by this act of charity. Nevertheless it was by no means a foregone conclusion that, upon conviction of possessing one balloon, he would have been sent to prison. (Pen. Code, § 1203; Health & Saf. Code, §§ 11715.6, 11718; Welf. & Inst. Code, § 3051.)[3] It seems very doubtful that an attorney whose sole devotion was to the interest of Baker, would have permitted him to testify.

Villapando presents a different problem. At first blush it seems that he has little to complain of. Counsel permitted Baker to testify and to attempt to save Villapando from prison. On the other hand, hindsight tells us that the try was in vain. As a matter of fact it positively added to the People's case which, as we shall show, was not very strong. Until Baker testified the evidence that the eight balloons found outside of the car had come from inside was at best circumstan-

---

We note that the court which decided *Lollar* abandoned its own test less than two months later. (*Ford* v. *United States*, 379 F.2d 123, 125-126.) It now holds that separate counsel for each codefendant must initially be appointed. Only if, after they have investigated the case and consulted with their clients, it is proved to the court that the interests of justice and of the clients will best be served by joint representation, may one of them be relieved. However, since our Supreme Court cites *Ford* in its opinion—although on a different point—we must assume that, at least for the time being, it rejects the procedure inaugurated by that case.

[3]Charges of prior burglary convictions allegedly suffered by Baker were found not to be true.

tial. It was Baker who furnished direct evidence on that point. In giving the reasons for its decision the court stressed the fact that there had been no explanation how "these things" could have got into the car without Villapando knowing about them.

The truth is—we believe—that in determining whether or not Villapando can complain about the failure to appoint counsel we should ignore the ill-fated attempt to save his skin and employ the following three step procedure. First, we must assume that the trial court did what it should have done, namely advise defendants of their right to separate counsel under certain circumstances.[4] Second, we must determine whether or not at that time the defendant would have had the right to separate counsel. Third, if that answer is "yes" we must apply the *Chapman* test and see whether the beneficiary of the error has proved beyond a reasonable doubt that the error did not contribute to the conviction. (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824].)

In answering the second question, we must also keep in mind that the phrase "conflict of interest" covers a variety of situations.    "Only if an actual or potential conflict of interest exists among codefendants and a motion for appointment of separate counsel is made in timely fashion, is it incumbent upon the trial court to appoint separate counsel. (*People* v. *Ingle*, 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Douglas*, 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Byrd*, 228 Cal.App.2d 646 [39 Cal.Rptr. 644].) Conflicts of interest among codefendants may arise when it would profit one defendant to attack the credibility of another (*People* v. *Kerfoot*, 184 Cal.App.2d 622 [7 Cal.Rptr. 674]); when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another (*People* v. *Donohoe*, 200 Cal.App.2d 17 [19 Cal. Rptr. 454]; when one defendant has a record of prior felony convictions and the others do not (*People* v. *Douglas*, 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]); when the defenses of codefendants are factually inconsistent (*People* v. *Welch*, 212 Cal.App.2d 397 [28 Cal.Rptr. 112]); or when appointed counsel believes a conflict of interest may exist

---

[4]It is noted that a legally unsophisticated layman may not realize the presence of factors entitling him to separate representation. This raises the problem mentioned in footnote 2, *supra*. Can there be an intelligent waiver of the right to separate representation by a defendant who is not separately represented?

(*People* v. *Douglas, supra*; *People* v. *Donohoe, supra*).''
(*People* v. *Odom*, 236 Cal.App.2d 876, 878 [46 Cal.Rptr. 453].)

In the case before us there are at least two factors which point to a potential conflict—which is all that is necessary. First and foremost, any attorney familiar with the case would have immediately realized that the case against Villapando was much the weaker of the two. There was no evidence physically linking him to any of the nine balloons. His bending over and partial disappearance was, in itself, ambiguous. Even if a court or jury would believe that Villapando moved in order to hide the "kit," this did not necessarily prove his connection with the eight balloons. The chances were that he would get the benefit of Baker's admission that the "kit" was his whether or not Baker testified. (Evid. Code, §§ 240, 1220, 1230; Health & Saf. Code, § 11555; *People* v. *Spriggs*, 60 Cal.2d 868 [36 Cal.Rptr. 841, 389 P.2d 377].) If we compare the evidence against Villapando with the solid case against Baker we cannot escape the conclusion that he had, in the words of *People* v. *Chacon, supra*, "potentially effective individual defenses."

Further, there is the matter of Baker's limited confession in which he admitted only to the one balloon he regurgitated and to the "kit." Under the circumstances his denial of any knowledge of the eight balloons amounted to an accusation that Villapando did know something about them. No counsel looking at the situation from Villapando's point of view could fail to realize that in a joint trial Baker's statement would probably be heard by the trier of fact, whether or not it was formally admitted against Villapando. This, then, would raise the question of whether or not the denial of knowledge of the eight balloons could be effectively deleted from the statement without prejudice to Baker or whether Villapando should have moved for a separate trial. (*Bruton* v. *United States*, 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]; *People* v. *Aranda*, 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].)

We do not have to hold that Villapando would have been entitled to a separate trial as a matter of right. Nor do we say that it would necessarily have been the best tactic for him to seek one. As we have seen, his attorney, whose good faith is of course not in question, must have thought that a joint trial, with Baker shouldering the blame, was his client's best chance.[5] The point is that Villapando was entitled to profes-

---

[5]Baker's statement was not admitted against Villapando at the preliminary hearing. It was, however, physically part of the transcript of

sional consideration of his problems by an attorney not burdened with dual representation.

There was error. Applying the *Chapman* test we are not convinced beyond a reasonable doubt that it did not contribute to the conviction. Therefore we must reverse.

It may be thought that the result we reach puts an undue burden on trial courts to ferret out potential conflicts and on the taxpayers who must eventually bear the financial burden when separate counsel is ordered. Quite apart from the fact that when constitutional rights are at stake such considerations become secondary, we do want to point to at least one countervailing factor: it seems to be a rare appeal in a criminal case where two defendants are jointly tried and represented by one attorney, that the question of separate representation does not become an issue. As of this moment this division of this court has four such cases under submission. As our discussion of the problems involved in this case shows, these cases are intrinsically difficult ones to decide. We must indulge in—as *Lollar* puts it—"informed speculation." At the very least the failure to canvass the necessity for separate representation at the trial level results in a waste of appellate time, which the taxpayers also pay for. At worst there must be a retrial of a defendant whose first trial could have resulted in a valid conviction. There is no question in our minds that if we compare the cost of obtaining separate representation for Villapando against the total cost of this appeal and the retrial, the former will seem small indeed.[6]

At a retrial the legality of the search of the car which resulted in the discovery of the "hype kit" will undoubtedly again arise. We are asked to discuss it on this appeal; we think, however, that we should not. The testimony adduced at the preliminary hearing was quite skimpy. None was added at the trial. The prosecutor did not even develop the fact that defendants "appeared to be unsteady, et cetera," before the search began. That came out on cross-examination. At one point Officer Edgerton volunteered a statement concerning Baker. He said: "His actions seemed——." At that point he

---

that hearing which was read by the trial court. (See *People* v. *Charles,* 66 Cal.2d 330, 338 fn. 12 [57 Cal.Rptr. 745, 425 P.2d 545].) Assuming that Baker would have been willing to exonerate Villapando whether or not the two defendants were jointly tried, it is difficult to see why no motion for severance was made.

[6]Both *People* v. *Chacon, supra,* and this case are direct appeals. Nothing in this opinion should be construed to indicate our belief as to whether the rule of *Chacon,* followed herein, is to be retroactively applied.

was stopped by the magistrate, because no question was pending. No one ever asked him what "his actions seemed." For that matter no one ever asked him to explain the "et cetera."

We are quite satisfied that a more searching inquiry into the probable cause for the inspection of the car will reveal facts additional to those on which the People now must rely.

The judgment is reversed with respect to each defendant.

Stephens, J., concurred.

AISO, J.—I concur in the judgment of reversal, with reservations as to whether *Chacon* holds that the *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], 386 U.S. 987 [18 L.Ed.2d 241, 87 S.Ct. 1283] criterion must be applied to all claims of prejudice for lack of separate counsel.

A petition for a rehearing was denied January 2, 1969, and respondent's petition for a hearing by the Supreme Court was denied February 13, 1969. Mosk, J., was of the opinion that the petition should be granted.