[Crim. No. 15550. Second Dist., Div. Five. Nov. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN THOMPSON, Defendant and Appellant.

*Assigned by the Chairman of the Judicial Council.

## COUNSEL

John H. Leahy, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Peter G. Samuelson, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**REPPY, J.—**

### I. *Statement of the Case*

Thompson and two codefendants, Washington and Williams, were charged by information with possession of marijuana in violation of Health and Safety Code section 11530. All were tried together before a jury and found guilty. All were represented by the same attorney, Mr. R. H. Lund. As to Thompson (hereinafter, defendant), proceedings were suspended and probation was granted for one year. Defendant appeals from the judgment (order granting probation; Pen. Code, § 1237).

### II. *Issues*

Defendant raises a number of issues the most telling of which questions whether, at his trial, he was afforded the effective assistance of counsel as guaranteed by the United States Constitution (Amend. VI) and California Constitution (art. I, § 13). Because we have determined that defendant is correct in the above contention, we do not reach the remaining issues he has raised since they will probably not arise in the same manner if defendant is retried and is represented by separate counsel.

### III. *Procedure*

Because of the nature of defendant's contention, we briefly outline some of the circumstances of the trial which are pertinent thereto. The district attorney's office filed the information on October 27, 1967. All three defendants appeared in Department "South E" on October 30, 1967, for their arraignment and plea. Thompson was represented by private counsel, attorney R. H. Lund. The codefendants remained unrepresented. A supplementary reporter's transcript reveals that the following occurred at that

proceeding: "MR. LUND: Your Honor, Mr. Thompson is ready to plead. Both of the other defendants advised me they can afford private counsel and they are arranging to retain me, but I would ask that their matter go until one week from today so that can become a reality, and they say they will have no objection to waiving time and that their case be set for the same date Mr. Thompson's case be set. THE COURT: Do you presently represent Mr. Thompson? MR. LUND: I presently represent Mr. Thompson and I appeared at the preliminary for all three men."

On November 6, 1967, Washington and Williams were arraigned and pleaded "Not Guilty" and their trial was set for January 17, 1968. R. H. Lund was listed in the court's minutes as representing Washington and Williams.

The trial court made no inquiry into the possibility of conflicts of interest at either proceeding and gave no advice concerning the right or desirability of having separate counsel in case it was felt that there was a conflict or the potential therefor.

## IV. *Facts*

At the trial the arresting officers, Keeran and MacLyman of the Long Beach Police Department, testified for the prosecution. They explained that at 1 a.m. on October 8, 1967, they came across a 1960 Thunderbird parked on Olive Avenue opposite the flow of traffic; that three men were sitting inside the vehicle; that they observed defendant, who was sitting in the front passenger seat, reach toward the floorboard as though he was placing something underneath the seat; that when they emerged from the stopped patrol vehicle and approached the open passenger side window they smelled a strong odor of marijuana emanating from the car. Officer Keeran, on direct examination, recounted that at that point he noticed Washington make a secretive movement ". . . away from his rear or the junction of the seat cushion and backrest" and that his partner told him that Washington "had placed something in the seat cushion." When Officer Keeran went on to relate that Officer MacLyman reached into that area where he had seen Washington place his hand, he was interrupted by the deputy district attorney who cautioned, "Don't mention what you found. Just continue. . . . Don't mention what you found." This admonition reflected a ruling which the trial judge had previously made off the record wherein he barred the mention to the jury of any weapons which had been found during the search of the automobile. The substance of this conference was made known later in the trial when the trial judge made the following statement:

"THE COURT: The record should show that this meeting is in the chambers

away from the jury and that the purpose of the meeting is because there was some consultations at the bench which were not reported. We want to get those straightened out.

"I want the record to show what happened, so I would like to make this statement that when the matter of the weapons was first mentioned during the Plaintiff's [sic] opening statement, the attorneys approached the bench at the request of the Defendants' attorney, and the Defendants' attorney objected to any reference to weapons found in the car because it would be prejudicial to the Defendants' case.

"I asked the Defendants' counsel at that time if there was any issue in the trial as to search and seizure, and Defendants' counsel said No, that the issue had previously been resolved against Defendants.

"I sustained the Defendants' objection and ordered that no reference be made to the weapons. . . ."

Next in the prosecution's case Officer MacLyman described the furtive movements of Washington in the back seat. He was not, however, asked by the deputy district attorney as to what he found in the crevice between the seat and rear cushion. On cross-examination Mr. Lund asked the officer to tell what he had found in that crevice. Officer MacLyman explained that he had found a pocket knife. The deputy district attorney had earlier notified the court that if such questions were asked by defense counsel he would feel free to explore the issue on redirect; and on redirect the deputy district attorney presented a .32 caliber revolver and three live and one expended shells to the officer who identified the items as having been found beneath the front seat on the driver's side of the Thunderbird in the course of a search following the arrest of the trio.

During the meeting in chambers, when the trial judge explained his earlier off-the-record ruling, he stated that he had warned defense counsel that if he persisted in inquiring about the finding of the pocket knife, he would be forced to allow the prosecution to introduce evidence on the finding of the revolver.[1] Mr. Lund explained his reason for cross-examining Officer MacLyman on the point as follows: "The description of the officers as to the movement of the Defendant Washington in the back seat of the automobile towards some hiding movements caused me to believe that in presenting this case it was necessary to show that what he put behind the seat of the car was a small pocketknife in order to show to the jury that it was not some other type of contraband or anything of a narcotic nature,

---

[1]We do not necessarily agree with the trial court that defense counsel's act of bringing out the presence of the knife made it proper for the prosecution to show the presence of the gun.

and I don't see how in any way that relates to the finding at a later time of the revolver under the carpet or under the front seat of the car." Later, on cross-examination, Washington explained that he became frightened when the police approached the car and hid the pocket knife just because he didn't want it found on his person, even though it was not illegal to possess it.

The officers brought out these additional facts: After the knife was retrieved, Officer Keeran observed on the rear floor in front of where Washington was seated a partially smoked handrolled cigarette that appeared crushed (or stepped on). It was warm when he touched it. All three occupants were ordered to exit from the vehicle, were informed that they were under arrest for possession of marijuana, and ordered to stand with their hands on the roof of the police unit. The officers searched the car. In addition to locating the revolver they found a partially full beer can on the front passenger's side. Then the officers observed that Williams had placed his foot on top of a cigarette and had begun grinding it into the pavement. Upon closer inspection, the officers found that the cigarette was hand wrapped in yellow paper and partially smoked. At this point the persons of all three suspects were searched for weapons. Following this search the officers noticed that there was an unsmoked handrolled cigarette lying in the street approximately one and one-half feet behind defendant's foot. All the cigarettes found contained marijuana.

After the jury had returned the guilty verdicts, Mr. Lund made a motion for a new trial, based in part on the following: "I will urge the Court to consider the effect of the showing of the firearm that originally had been excluded from the evidence, which was brought out through the unfortunate problem involving the Defendant Washington, who was attempting to hide apparently a pocketknife. It may be that in a situation like this, and sometimes I think it is, . . . it is impossible for three Defendants charged jointly to have a fair trial if they stand trial together. Certainly the decision as to Williams and Thompson might have been different had they not been on trial with the Defendant Washington who acknowledged his guilt and sat there where they found the marijuana cigarette right at his feet in the automobile. Then combined with the acts on his part that let in, because as I saw it to defend Defendant Washington adequately I had to show what he was attempting to put behind his seat, that it was a pocketknife. That opens the door to let in the other incriminating evidence—not incriminating evidence as to the facts of this case, but certainly prejudicial to the minds of untrained judges of the facts—that the revolver was found in the automobile." His motion was denied.

## V. *Discussion*

■ Guidelines for appellate review of problems involving the right to separate counsel are set out in *People* v. *Chacon,* 69 Cal.2d 765 [73 Cal. Rptr. 10, 447 P.2d 106]. Essentially *Chacon* holds that where separate counsel have not been appointed and where defendants on appeal can show that a conflict of interest existed between them at their trial, then a conviction must be reversed unless the prosecution can show beyond a reasonable doubt that the resulting prejudice[2] was harmless. ■ Further, *Chacon* emphasizes that defendants who have not requested separate counsel or who have not been informed by the court of the dangers of single counsel for multiple defendants[3] cannot be held to have waived their Sixth Amendment right. (See also, *People* v. *George,* 259 Cal.App.2d 424, 432 [66 Cal.Rptr. 442]; *People* v. *Keesee,* 250 Cal.App.2d 794, 798 [58 Cal.Rptr. 780]; *People* v. *Watkins,* 248 Cal.App.2d 603, 606 [56 Cal. Rptr. 734].)

Here we face a situation where all the accused were represented by a single attorney at trial. The fact that the attorney was privately retained by defendant then by Washington and Williams does not compel us to find that defendant intelligently waived his right to effective counsel. (See *Craig* v. *United States,* 217 F.2d 355, 358-359, cited with approval in *People* v. *Douglas,* 61 Cal.2d 430, 439 [38 Cal.Rptr. 884, 392 P.2d 964].) ■ "A waiver is . . . an intentional relinquishment . . . of a known right. . . . The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (*Johnson* v. *Zerbst,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357].)

■ In light of a record which does not indicate that defendant was warned of the dangers of representation by a single counsel of several defendants when Mr. Lund became counsel for the codefendants, we should not presume that defendant knowingly and intelligently waived his right to effective counsel. Finding no waiver, we consider whether the interests of defendant and his codefendants were in conflict.

■ As the *Chacon, George, Keesee* and *Watkins* opinions, *supra,* emphasize, an appellate court, with the record before it, may sometimes be able to ascertain whether the constitutionally guaranteed right of "effec-

---

[2]Prejudice follows a fortiori from a showing of conflict of interest. (Cf. *Glasser* v. *United States,* 315 U.S. 60 [86 L.Ed. 680, 62 S.Ct. 457]; *People* v. *Douglas,* 61 Cal.2d 430, 437 [38 Cal.Rptr. 884, 392 P.2d 964].)

[3]Compare *People* v. *Addison,* 256 Cal.App.2d 18, 23 [63 Cal.Rptr. 626].

tive counsel" was afforded at the trial; it makes no difference whether or not the conflict was apparent to the participants at the time of trial.

What will qualify as a conflict of interest is an illusive concept. ■ In *Chacon* it is held that a conflict necessarily exists when a jury has to fix the penalty for more than one defendant (69 Cal.2d at p. 775). In *People* v. *Odom,* 236 Cal.App.2d 876, 878 [46 Cal.Rptr. 453], there are set out examples of situations where courts have discerned conflicts: "Conflicts of interest among codefendants may arise when it would profit one defendant to attack the credibility of another [citation]; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another [citation]; when one defendant has a record of prior felony convictions and the others do not [citation]; when the defenses of codefendants are factually inconsistent [citation]; or when appointed counsel believes a conflict of interest may exist [citations]."

■ That there materialized an actual conflict in the case at bench is manifest. As defense counsel pointed out in his motion for new trial, he thought he was forced to question Officer MacLyman about what was found beneath the seat in order to prevent the jury from speculating that what Washington had secreted there was additional contraband. Such questioning then allowed the prosecution to elicit from the officer the fact that a loaded revolver had been found under the front seat.[4] While reasonable men may differ as to whether it was wise for defense counsel to have made the choice to show that Washington was not hiding a cache of contraband in face of the fact that the weapon evidence would probably come out and have an unfavorable effect against all three defendants, the point is that defense counsel should not have been forced to weigh the interests of more than a single client. The fact that he had to make the choice he did deprived defendant of effective representation. " 'Each of the defendants was entitled to have questions of . . . [trial strategy] considered and decided by counsel independently of the interests of the other.' " (*People* v. *Douglas, supra,* 61 Cal.2d 430, 438, quoting from *People* v. *Lanigan,* 22 Cal.2d 569, 577 [140 P.2d 24, 148 A.L.R. 176].) Defendant "was entitled to professional consideration of his problems by an attorney not burdened with dual representation." (*People* v. *Baker,* 268 Cal.App.2d 254, 259-260 [73 Cal.Rptr. 758].)

Both *People* v. *Chacon, supra,* 69 Cal.2d 765, 775, and *People* v. *Odom, supra,* 236 Cal.App.2d 876, 878, point out that a record which divulges *potential* conflict of interest is vulnerable to attack. This is a particularly difficult area of appellate review as this court has recently pointed out, be-

---

[4]The trial judge's earlier ruling excluding such testimony is indicative of the fact that he considered that its admission would be harmful to defendants' cause.

cause it is precisely the *fact* of the appointment of single counsel for codefendants which may mask conflicts between them. (See fn. 2 in *People* v. *Baker, supra,* 268 Cal.App.2d 254, 256.) In those cases where a potential conflict was found to be present, it was because the record revealed some disparity in the relative positions of codefendants (*People* v. *Baker, supra,* 268 Cal.App.2d 254, 257-259—weaker case against one defendant; *People* v. *Gallardo,* 269 Cal.App.2d 86, 87 [74 Cal.Rptr. 572]—relatively greater involvement of codefendant).

▆ In the case at bench the potential for the conflicts which did develop was high because of the very nature of the charge against the defendants and the trial process itself.[5] ▆ Proof of the crime of illegal possession of marijuana requires a three-part showing: that the accused exercised dominion and control over the drug; that he had knowledge of its physical presence; and that he had knowledge of its narcotic character (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Winston,* 46 Cal.2d 151, 158 [293 P.2d 40]; *People* v. *Gorg,* 45 Cal.2d 776, 780 [291 P.2d 469]; *People* v. *Gory,* 28 Cal.2d 450, 454 et seq. [170 P.2d 433].) Each of these elements may be proved by circumstances which will inferentially show "constructive possession" when added together. (*People* v. *Solorio,* 232 Cal.App.2d 527, 530 [42 Cal.Rptr. 914]; *People* v. *Juvera,* 214 Cal.App.2d 569, 573 [29 Cal.Rptr. 653]; *People* v. *Estrada,* 185 Cal.App.2d 435, 437 [8 Cal.Rptr. 308]; *People* v. *Stanford,* 176 Cal.App.2d 388, 390 [1 Cal.Rptr. 425].)

▆ In the instant case there was no occupant of the car who had clear physical possession of the marijuana. The three men were sitting in an automobile in which the smell of burning marijuana was detected. This would indicate that one or more *but not necessarily all* of the defendants were committing an illegal act. For the pupose of establishing constructive possession and the dual elements of knowledge as to all three defendants, the prosecution had to rely on circumstances, i.e., the finding of a still warm marijuana cigarette on the rear floorboard in front of Washington, the finding of a crushed marijuana cigarette beneath the foot of Williams during his "pat down," and the finding of an unsmoked marijuana cigarette about one and one-half feet away from where defendant was standing. Such different circumstances carried varying strengths of inference. These circumstances seem stronger against Washington and Williams than against defendant because of the place and manner of finding the contraband (the proximity factor). Further a partially consumed beer can was found on the front floorboard beneath the area where defendant was sitting. Defend-

---

[5]See Note, *People* v. *Chacon: Additional But Inadequate Protection For The Right to Separate Counsel* (April 1969) 16 U.C.L.A. L.Rev. 626, 631-632.

ant could have argued plausibly that this pointed to his nonparticipation in any possession of marijuana. But such an argument would have been at the expense of the codefendants. Any argument which stressed the differences in circumstantial evidence against each one of the trio would clearly help one or two of the defendants at the expense of the remaining defendant or defendants.

A clear example of how a single counsel representing multiple defendants is handicapped in such a situation occurred during defense counsel's cross-examination of Officer Keeran. Defense counsel pressed Officer Keeran to admit that he had watched codefendant Williams at all times after he had exited from the Thunderbird and did not see him with any marijuana in his hands. This admission bolstered the defense contention that Williams had not dropped the marijuana cigarette found at his foot, but simultaneously it may have strengthened the inference that defendant was the one who had dropped it. It is clear that defense counsel could not very well have attacked the officer's credibility on defendant's behalf after he had just made a helpful statement (as it appeared at the time) in reference to Williams. Thus, in the present case, because the prosecution needed to rely on circumstantial evidence, much of which varied in strength as to each defendant according to each defendant's relative physical position in the car or at the pat down search, each should have been provided with separate counsel who could have stressed these differences both during the testimonial portion of the trial and during argument to the jury. (See *People v. Gallardo, supra,* 269 Cal.App.2d 86.) We are in the position of at least having an "informed speculation" that defendant's rights were prejudicially affected. Thus, we must reverse the judgment below. (Cf. *People* v. *Chacon, supra,* 69 Cal.2d 765, 776.)

■ In concluding this opinion we feel that it is appropriate to observe that, if in the course of his preparation for trial defense counsel representing multiple defendants should find that there is a substantial indication of conflict of interest or the potential therefor, in the interest of judicial efficiency and economy it is important for him to bring this promptly to the attention of the trial court.

The judgment is reversed.

Kaus, P. J., and Aiso, J., concurred.