[Crim. No. 15353. Second Dist., Div. One. Oct. 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
THEODORE ABRAHAM COHEN et al., Defendants and Appellants.

300

## COUNSEL

Theodore A. Cohen, in pro. per., for Defendant and Appellant Theodore Abraham Cohen. Howard Meyerson, James H. Davis and Richard C. Voorhies for Defendant and Appellant Susan Cohen.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

THOMPSON, J. — Theodore A. Cohen appeals from a conviction of: (1) conspiracy to commit grand theft and forgery and to obtain money by false pretenses; and (2) nine counts of grand theft. Susan Cohen appeals from a conviction of one count of grand theft. We modify the judgment to comply with Penal Code section 654 and to correct a clerical error, and affirm the judgment as modified as to Theodore A. Cohen. The judgment as to Susan Cohen is reversed.

### Facts of Offense

Stated in the light most favorable to the judgment, the record discloses the following. On May 4, 1964, appellant Theodore Cohen, an attorney-at-law, met with Jacob Fishter, a field claims representative for State Farm Automobile Insurance Group, to discuss the claim of Cohen's clients against State Farm. In order to support Cohen's claim to a settlement of $3,000, Fishter prepared a statement of a fictitious eyewitness purporting to establish the liability of State Farm's insured. Theodore Cohen obtained the forged signature "Martha Ruggles" upon the statement. Fishter, pursuant to his authority, prepared a $3,000 draft payable to Paula and Reuben Goldstein (Mr. Cohen's clients) and to Theodore Cohen. He delivered the draft to Cohen who said that he "would take care of Fishter."

A few days later, Mr. Cohen met Fishter for lunch at the La Brea Inn

and gave him four $100 bills. At that meeting, and at another about a week later, they agreed that when Fishter had "claims with possibilities" Cohen would supply fictitious medical reports and statements, Fishter would issue State Farm drafts in payment of claims in favor of fictitious claimants and deliver them to Cohen, and Cohen would cash the drafts through his bank account. Cohen and Fishter agreed "to split 50-50."

On eight separate occasions, Theodore Cohen and Fishter implemented the plan and presented claims of fictitious claimants. On each occasion, Fishter issued a State Farm draft which Cohen cashed. On each occasion, they shared in the proceeds of the fraudulently obtained funds. The drafts ranged in amount from a low of $412.50 to a high of $2,250. The larger drafts were payable to the fictitious client and "Theodore Cohen, his attorney." The smaller drafts were payable to the fictitious client alone. On a ninth occasion, Fishter and Cohen prepared a fictitious claim in the name of Susan Cooper, Mrs. Susan Cohen's maiden name. The claim sought damages for purported injuries suffered in an accident at Dodger Stadium in which Mrs. Cohen had not been a participant. False medical reports were prepared by Mr. Cohen and a false report of the accident was prepared by Fishter. Susan Cohen signed the claim. Fishter prepared a draft in the amount of $475 in payment of the false claim and gave it to Mrs. Cohen who cashed it. Fishter received one-half of the face amount of the draft.

## Issues on Appeal

Appellants' opening brief contains 107[1] contentions. We discuss those worthy of extended treatment in the body of this opinion and dispose of appellants' other contentions, eliminating duplication, in the appendix to it.

Appellants' contentions include the following: (1) They attack the validity of the composition of the grand jury which returned the indictment upon which the prosecution of the case at bench is based; (2) Theodore Cohen contends that the court erred in permitting him to represent himself in pro. per.; (3) Susan Cohen contends that the trial court erred in permitting Theodore Cohen to represent her; (4) They contend that their conduct is proscribed by Insurance Code section 556 and that it is therefore not punishable as grand theft or conspiracy to commit grand theft; (5) They contend that the court erred in ruling on their motions re discovery and in quashing a subpena duces tecum; (6) They contend that the trial court erred in denying defense motions for continuance; (7) Theodore Cohen contends that the court improperly convicted him of conspiracy while

---

[1]The index to appellants' opening brief includes contentions numbered to "CVIII." "CII" is omitted, however.

acquitting those charged as his co-conspirators; (8) Theodore Cohen contends that the judgment is in error because it is contrary to the conclusion announced by the court and because it imposes double punishment contrary to Penal Code section 654.

## Composition of Grand Jury

Appellants contend that the grand jury which returned the indictment which is the basis of the prosecution against them was illegally constituted. They argue that: (1) Penal Code section 911 imposes a religious test for qualification of grand jurors; (2) The exclusion of lawyers, physicians, and lawyers' wives from the grand jury denied appellants representation upon the grand jury of persons of their class; (3) Penal Code section 897, which states the qualifications of grand jurors, is unconstitutionally vague and ambiguous; (4) Rule 29 of the Los Angeles Superior Court dealing with the selection of grand jurors in that court is contrary to state law; and (5) The process of selection of the grand jurors excluded an identifiable element of the community. We conclude that the record and law do not support the contention.

 *Religious Test.* Penal Code section 911 states: "The following oath shall be taken by each member of the grand jury: 'I will support the Constitution of the United States and of the State of California . . . , so help me God.' " Appellants argue that section 911 in effect imposes a requirement of belief in God as a prerequisite for service on a grand jury and thus violates the First Amendment of the United States Constitution.

We do not so construe Penal Code section 911. The provisions of section 911 must be read in conjunction with Code of Civil Procedure section 2096 which states: "When a person is sworn who believes in any other than the Christian religion he may be sworn according to the peculiar ceremonies of his religion if there be any such." An atheist or agnostic "believes in any other than the Christian religion." Code of Civil Procedure section 2096 thus excuses the nondeist from affirming a belief in God as a prerequisite to service on a grand jury.

Appellants' argument must also fail by reason of the record before us. Unconstitutionality of the grand jurors' oath has no effect on appellants' rights unless the phrase "so help me God" in the oath as worded in Penal Code section 911 barred some person from serving on the grand jury. Appellants' contention that the questioned phrase is unconstitutional is not accompanied by a showing that it barred anyone from grand jury service. To the contrary from the record it is equally possible to conclude that persons were permitted to serve on the grand jury without expressing the challenged phrase.

It is conceivable that the oath stated in Penal Code section 911 might be applied in practice to impose a religious test which might be unconstitutional. We do not reach that problem on the record of the case at bench. There is no factual showing that Penal Code section 911 is so applied.

 *Exclusion of lawyers, physicians, and lawyers' wives.* Appellants contend that the grand jury which indicted them was unconstitutionally formed because lawyers, physicians, and lawyers' wives were excluded from it. Appellants Theodore and Susan Cohen note that they are, respectively, a lawyer and a lawyer's wife and that their nonappealing codefendant is a physician. They base their argument that persons of a like status were excluded from the grand jury upon Penal Code sections 894 and 897 which exempt from the class eligible for grand jury service persons specified in Code of Civil Procedure sections 200-202, and upon rule 29(b) of the Los Angeles Superior Court.

Appellants' contention is unsupported by the record in one respect. While Code of Civil Procedure section 202 exempts attorneys-at-law and practicing physicians from service, nothing in that section exempts the wives of lawyers. Neither does rule 29 of the Los Angeles Superior Court, which is the only other basis of exclusion upon which appellants rely. At the time of selection of the grand jury which indicted appellants, rule 29(b) provided as follows: "Spouses of judges and commissioners of the Superior Court and the Municipal Court and attorneys known to be in active practice shall not be nominated for Grand Jury service." The rule is undoubtedly ambiguous. It can be construed as referring to two classes of persons, one consisting of spouses of judges and commissioners and the other of attorneys known to be in active practice. It may also be construed as referring to spouses of judges, commissioners, and attorneys. We conclude that the grammatical structure of the rule indicates that the former meaning is the one intended. Otherwise the word "and" used as a conjunction between Superior Court and Municipal Court is awkward surplusage. Moreover, rule 29(b), to the extent that it purported to limit the discretion of the superior court judges of Los Angeles County in selecting grand jurors to an extent not specified by state law, cannot be construed as mandatory in its limitation. (*People* v. *Teitelbaum,* 163 Cal.App.2d 184 [329 P.2d 157], hg. den. in Supreme Court.) Los Angeles Superior Court rule 29(b) thus did not by its terms exclude spouses of lawyers from service on the grand jury. The record contains no other evidence purporting to establish that they or any other persons, except attorneys-at-law, physicians, and spouses of judges and commissioners, were excluded.

Contrary to appellants' contention, the exclusion of physicians and lawyers from the grand jury which returned the indictment does not con-

stitute a violation of the equal protection, due process, or any other provision of the United States Constitution. Without deciding the point, we accept appellants' argument that the same strict constitutional doctrine that governs the selection of petit jury panels applies to the selection of grand juries. (See *Labat* v. *Bennett* (5th Cir. 1966) 365 F.2d 698.) Application of that doctrine to the case at bench reveals the fallacy of appellants' contention that the exclusion of lawyers and physicians from a grand jury renders it constitutionally defective. The problem of classification of potential jurors by occupation has been thoroughly considered by the Court of Appeal of the Fifth Circuit in *Labat, supra*. The court while there finding that a systematic exclusion of Negroes and wage earners from grand jury service constituted an unconstitutional denial of equal protection and due process to defendants in the jurisdiction said: "The overriding consideration in establishing a jury system is not the burden of jury service on prospective jurors but the fairness of the system. The two considerations may be accommodated by exemption of certain occupational groups for example doctors and firemen; the good of the community requires that their services not be interrupted by jury duty." (*Labat* v. *Bennett* (5th Cir. 1966) 365 F.2d 698, 720.)

The facts of the case at bench disclose that medical doctors and lawyers were excluded from the grand jury. The exclusion of doctors is specifically validated by *Labat* v. *Bennett, supra*. The exclusion of lawyers is validated by analogy. There is in the case of attorneys-at-law a community interest in securing their uninterrupted service that is equal to a similar community interest in the case of physicians. Additional reasons exist for the exclusion of lawyers known to be in active practice from the grand jury. They are officers of the court, a role inconsistent with the function of a grand jury which must operate with independence. (See Pen. Code, § 934; *Samish* v. *Superior Court*, 28 Cal.App.2d 685 [83 P.2d 305].) They also represent private clients whose interests potentially may be affected by what the grand jury does. To permit lawyers to serve on a grand jury under these circumstances is to add further to the unfortunate waning of public confidence in the judicial system.[2]

Appellants Theodore and Susan Cohen stand in no special position because they are respectively a lawyer and a lawyer's wife or because their codefendant is a physician. The Supreme Court of the United States has stated: "That right [to an impartial jury] does not entitle one accused of a crime to a jury tailored to the circumstances of the particular case,

---

[2]We note parenthetically that the same reason, i.e., the need for public confidence in the judicial system validates the exclusion of the spouses of judges and commissioners.

whether relating to the sex or other condition of the defendant. . . ." (*Hoyt* v. *Florida*, 368 U.S. 57, 59 [7 L.Ed.2d 118, 120-121, 82 S.Ct. 159].)

*Constitutionality of Penal Code section 897.* Appellants contend that Penal Code section 897 is unconstitutionally vague. That section provides in pertinent part: "The selection and listings [of grand jurors] shall be made of persons suitable and competent to serve as jurors and in making such selections there shall be taken only the names of persons who are not exempt from serving, who are in the possession of their natural faculties, who are not infirm or decrepit, who are of fair character and approved integrity, and who are of sound judgment." Appellants, without citation of authority, attack the requirements of "fair character" and "approved integrity" imposed by the statute.

We find no constitutional infirmity in the provisions of Penal Code section 897. Grand jurors occupy a particular status in that they are members of a body constituting part of the state government. (*Irwin* v. *Murphy*, 129 Cal. App. 713 [19 P.2d 292].) "Fair character" and "approved integrity" must be construed as requiring that persons serving on that body possess the traits of character and integrity requisite to that important status. The Supreme Court of the United States has expressly so held in two recent decisions. (*Carter* v. *Jury Commission of Greene County*, 396 U.S. 320, 331-333 [24 L.Ed.2d 549, 558-559, 90 S.Ct. 518], which holds valid on its face an Alabama statute limiting grand jury service to "persons who are generally reputed to be honest and intelligent and esteemed in the community for their integrity, good character and sound judgment"; *Turner* v. *Fouche*, 396 U.S. 346, 354 [24 L.Ed.2d 567, 575, 90 S.Ct. 532], which holds valid a Georgia statute permitting the exclusion from the grand jury of persons found "not discreet" by a superior court judge or found "not upright and intelligent" by the jury commissioner.)

*Rule 29, Los Angeles Superior Court.* Appellants contend that Los Angeles Superior Court rule 29 excludes persons from grand jury service in a manner which is contrary to state law. They argue that persons who may be excused from petit jury service pursuant to Code of Civil Procedure section 200 by making a showing that they are included within the categories stated in that code section are excluded from nomination for the grand jury in Los Angeles by the court rule. The contention is without merit. Rule 29, to the extent that it purports to limit the discretion of the superior court judges of Los Angeles County to an extent not permitted by state law, must be construed as directory and not mandatory in its limitation. Any discrepancy thus does not fatally invalidate the composition of the grand jury. (*People* v. *Teitelbaum*, 163 Cal.App.2d 184 [329 P.2d 157], hg. den. in Supreme Court.)

█ *Exclusions from Grand Jury.* Appellants contend that the method of selection of the grand jury which returned the indictment was constitutionally defective in that it excluded "an identifiable element of the community." As a factual basis for their contention, appellants rely upon "the makeup and characteristics of the 1966 Los Angeles County Grand Jury," upon an affidavit filed in connection with their motion for a new trial, and upon the nomination of prospective grand jurors by superior court judges utilized as part of the selection process.

The brief filed by appellants does not state "the makeup and characteristics" of the grand jury. Neither does it cite us to the portion of the record, if any, where those facts may be ascertained. Since it is not our duty independently to search the record in an effort to find reversible error, we conclude that appellants have failed to establish that "the makeup and characteristics" of the grand jury can lead to the inference that an identifiable element of the community was excluded from it.

The affidavit filed in support of the motion for a new trial similarly does not establish invidious exclusion. The affidavit from its face appears to have been prepared in connection with an apparently unsuccessful attempt to attack the validity of the composition of the 1966 grand jury in the federal courts. It is a statement by J. J. Daniels who purports to be a reporter and political editor of "the Herald Dispatch." The affidavit recites that Mr. Daniels has "researched and analyzed" the makeup of Los Angeles grand juries since 1961 and in essentially conclusionary terms states that the membership of the 1967 grand jury shows a disproportionate membership of older persons, that the 1964 grand jury shows a disproportionate membership of residents of "high class" neighborhoods, and that the 1967 grand jury shows a disproportionate membership of persons of "top economic classes" to the exclusion of wage earners and blue-collar workers. Significantly, no statement in the affidavit that can be characterized as approaching factual deals with the composition of the specific grand jury, the 1966 body, which indicted appellants. The only statement in the affidavit which purports to relate to that grand jury is the bald conclusion that it was not balanced on ethnic lines. We thus conclude that the trial judge properly determined that the affidavit filed by appellants did not establish the factual basis for their legal contention that the 1966 grand jury was selected in an unconstitutional manner.

█ Appellants rely also upon the manner of selection of grand jurors provided by rule 29 of the Los Angeles Superior Court. That rule provided at the pertinent time that each judge of the Los Angeles Superior Court nominate two persons as potential grand jurors. The persons so nominated constituted the larger panel from which the actual grand jurors were drawn.

Appellants argue that the process excludes persons who are not known to the judges of the Los Angeles court and that the exclusion violates constitutional principles.

Assuming the accuracy of appellants' argument that nomination of prospective grand jurors, pursuant to Los Angeles Superior Court rule 29, leads to the factual conclusion that the persons nominated were known to the respective nominating judges, that conclusion does not support appellants' ultimate contention that the grand jury was unconstitutionally selected. The United States Supreme Court, in discussing constitutional limitation upon state processes of trial jury selection, has said: "Our duty to protect the federal constitutional rights of all does not impose on states our conception of the proper sources of jury lists, so long as the source reasonably reflects a cross section of the population suitable in character and intelligence for that civic duty." (*Brown* v. *Allen,* 344 U.S. 443, 474 [97 L.Ed. 469, 498, 73 S.Ct. 397, 437].)

Historically, grand juries in California as in other states have performed functions differing significantly from that performed by a federal grand jury. The federal grand jury operates solely as part of the process of prosecution for crimes against federal law. Its independent power of investigation is drastically limited and it performs no other governmental function. Traditionally, grand juries of California and other states have performed a much broader category of service. They possess the power independently to investigate the possibility that a crime may have been committed. (Pen. Code, §§ 918, 939.9.) They also act as watchdogs of the public trust and as an objective body reporting on the operations of local government.[3]

In nominating potential grand jurors, the judges of the Los Angeles Superior Court were exercising the power recognized by the United States Supreme Court in *Brown* v. *Allen, supra,* to compile a list of persons suitable in character and intelligence for the important, technical, and difficult civic duty imposed by law and long tradition upon members of the grand jury. Their exercise of that power was not unconstitutional so long as the selection process did not discriminate against an identifiable group of qualified per-

[3]Penal Code, section 919 and Government Code, section 3060, grand jury to inquire into the case of every person imprisoned and not indicted, into the condition of public prisons, and into wilful or corrupt misconduct in office by public officers. Penal Code, section 920, grand jury shall inquire into all sales and transfers which, under state law, might escheat. Penal Code, sections 925 and 932, grand jury shall make an annual audit of the books, records and accounts of all officers of the county and may order the district attorney to bring suit for money due the county. Penal Code, section 927, grand jury shall, in even-numbered years, investigate and report on the need for increases or decreases in the salaries of county supervisors, district attorney and county auditor. Penal Code, section 928, grand jury shall investigate and report upon the needs of all county officers including the abolition or creation of offices.

sons and the resulting grand jury represented a "cross section of persons suitable to perform the duty." Nothing in the record indicates discrimination or that the 1966 Los Angeles grand jury was not composed of such a cross section.

Appellants' contention that the indicting grand jury was unconstitutionally composed must, therefore, be rejected.

### Waiver of Counsel by Theodore Cohen
### Adequacy of Representation of Susan Cohen

At all times here material, appellant Theodore Cohen was an attorney-at-law admitted to practice in California. The indictment against Theodore and Susan Cohen was returned on September 27, 1966. On October 3, 1966, Theodore and Susan Cohen were present with their codefendant Dr. Zelechower in department 100 of the Los Angeles Superior Court. Each defendant was fully advised of his constitutional right to counsel, including the right to the services of appointed counsel at county expense. Theodore and Susan Cohen each stated that they had no questions as to their constitutional rights. In response to an inquiry from the court, Theodore Cohen replied that he was not representing himself. He stated that he had no attorney. The judge asked: "Do you have money to hire an attorney, Mr. Cohen?" Cohen replied: "Your Honor, I prefer not to state that at this time on the grounds that it may tend to incriminate me." He asked for a continuance. The judge replied: "All right. At this time you do not wish the Court to appoint an attorney for you?" Cohen answered: "No, your Honor. I believe that I will have counsel, but not knowing the charges, I haven't had a chance to discuss it." The matter was then continued for one week. Susan Cohen informed the court that she could afford private counsel.

On October 10 the matter was called for arraignment. Theodore Cohen and Dr. Zelechower were represented by Patrick Coleman, an attorney-at-law. Susan Cohen was represented by Theodore Cohen. The trial judge asked Susan Cohen if she in fact wished to be represented by Mr. Cohen. She replied: "Yes." The judge in Susan Cohen's presence stated that he had serious reservations concerning the ethical propriety of Mr. Cohen's representation of Susan Cohen.

After an intervening continuance, motions pursuant to Penal Code section 995 were made on behalf of all of the defendants and argued to the court on November 17 and 18, 1966. Coleman appeared as counsel for Theodore Cohen and Zelechower, and Theodore Cohen appeared as counsel for his wife Susan. The motions were argued for a period of two days. The laboring oar was pulled by Theodore Cohen. Coleman said almost nothing. Appel-

lants' motions pursuant to Penal Code section 995 were denied and the matter continued to November 28.

After an intervening continuance, the case was set for December 8, 1966, for hearing on a demurrer by appellants to the indictment. At the proceeding on December 8, the trial judge, in the presence of Susan and Theodore Cohen, said: "There is another matter which has not been raised which gives me some concern and causes my eyebrows to raise, really, and that is representation of one defendant by a codefendant—an attorney-at-law." The prosecuting attorney answered, saying: "The People are prepared to solve that matter when we return." The matter was continued to December 22 for hearing on the demurrer. Susan Cohen was not present at the hearing on December 22. Theodore Cohen stated to the court: "I might mention, as the Court did point out as to my representing Mrs. Cohen, it had been our intention to make other arrangements in the event that the matter went beyond the motion stage. However, at this state a writ is presently pending in the District Court which has not been ruled on." The case was continued a week because of the absence of Susan Cohen.

After an intervening continuance by reason of the failure of Theodore and Susan Cohen to appear, the case was again heard on January 9, 1967. Both Susan and Theodore Cohen were present. The trial judge asked: "Do I understand, Mr. Cohen, that you still are going to represent Susan Cohen for the purposes of these proceedings?" Theodore Cohen replied: "Yes, sir, your Honor." Susan Cohen said nothing.

On January 12, 1967, the court called the case for trial setting. Susan and Theodore Cohen were present. The judge said: "This matter is here for setting. I understand there will be a substitution of attorneys, is that right?" Patrick Coleman, representing Theodore Cohen and Dr. Zelechower, answered: "No, your Honor. At this time we will make a motion to sever. I would represent that Mrs. Cohen wants Theodore Cohen to represent her. I would be in a position to represent Mr. Cohen and Dr. Zelechower and Mr. Cohen to represent Mrs. Cohen. I think the solution now is that we devolve it into a severance and I could proceed with Theodore Cohen and Dr. Zelechower, and then perhaps a separate proceeding for Mrs. Cohen and Theodore Cohen the attorney." The prosecution opposed the motion to sever. As part of his opposition, the deputy district attorney orally moved: "that the defendant Susan Cohen is [sic] represented by an attorney limited to exclude those attorneys who are codefendants in the same matter. We do suggest there is an obvious conflict of interest. If that particular choice of attorney is made the People would be forced to make a motion for severance." The trial judge replied: "Mr. Cohen is still a member of the bar and his wife is entitled to an attorney of her own choice." He then addressed Susan Cohen saying:

"It is your decision, Mrs. Cohen, to have your husband represent you at all times, recognizing the fact that he is still one of the codefendants who is named in the indictment." Susan Cohen replied: "Yes." The judge asked: "Are you aware that that fact may come out indirectly to the jury; although it may not be admissible?" Mrs. Cohen said: "Yes." The judge asked: "Is this a decision you yourself are making which you think is the right decision?" Susan Cohen replied: "Yes. I really don't have anyone else to represent me. I have a lot of confidence in my husband." The trial judge granted the motion to sever stating: "The Court feels in view of the statements made by the defendant . . . balancing the various equities, the right of an individual to select her own counsel, the problems faced by the People, . . . the Court will grant the motion to sever the case of Susan Cohen." The trial court then received not guilty pleas from all of the defendants. It set the case of Theodore Cohen and Dr. Zelechower for trial on February 23 in department 103 and the severed case of Susan Cohen for trial on March 8 in department 101.

After intervening continuances, the matter of Theodore Cohen and Dr. Zelechower was reset for April 10. On April 4 the case was advanced on the calendar on the joint motion of the prosecution and defense. Theodore Cohen and Dr. Zelechower were present but Patrick Coleman, their counsel, was not. It was reported to the court that Mr. Coleman had accepted appointment to a judicial position, court commissioner, so that he could no longer represent the defendants. On the joint motion of the defense and prosecution, the case was continued to May 15. The court clerk inquired: "Is there a motion to relieve Coleman?" The judge stated: "I think that is something in which he should participate." The prosecuting attorney said: "That perhaps should be accomplished by Mr. Coleman at his convenience, and that I am sure can be done by a Minute Order; and then since the defendants are well aware of their position, they can handle the responsibilities for obtaining new counsel, . . ." The judge asked: "Is that agreeable?" Theodore Cohen replied: "Yes, your Honor." Dr. Zelechower also agreed. The clerk's transcript contains no minute order relieving Coleman as counsel.

On May 11, the case of Theodore Cohen and Dr. Zelechower was again advanced on the calendar. Cohen sought a further continuance. Cohen stated: "The problem is that Mr. Coleman, who had been representing us, has received a judicial appointment and so he can no longer represent us. I have discussed the matter with several other counsel on behalf of both the doctor and myself. I am certain that we will have counsel ready when the matter goes . . ." In response to a further inquiry from the judge, Cohen replied that he was actively seeking counsel. The case was then continued to May 18 and transferred to department 100 for trial setting.

On May 25, the matter was called in department 100 "for resetting and substitution of counsel." The court asked: "What is the situation at this time?" Theodore Cohen replied: "I think we could have counsel by Monday." On that representation, the case was continued to May 29. On May 29, Theodore Cohen stated to the court: "We have counsel, Mr. Weiss. Mr. Davis is going to represent me." Mr. Weiss was not present in court and it was represented that "he will be back Thursday night." The case was continued to "Thursday morning."

On June 1, Theodore Cohen and Dr. Zelechower were present in department 100 along with Mr. Harry Weiss, an attorney-at-law. Weiss stated: "Your Honor, at this time may the record indicate that Mr. Zelechower is asking me to represent him in this matter?" Theodore Cohen said: "Your Honor, Mr. Davis is still out of town. I have no objection to appearing in pro. per. at this time so that the matter might be set. It has been put over a few times." The judge answered: "All right. The substitution will have to be effective in the trial department. This should be advanced formally for that purpose so there is no question of the substitution being effected." The matter was then set for trial on August 15 in department 112.

After intervening continuances, the severed case of Susan Cohen in which Theodore Cohen appeared as her counsel had been set for July 10, 1967. On that date, she was present in court represented by Theodore Cohen. The prosecuting attorney stated: "At this time I make a motion to continue and reconsolidate the matter of Susan Cohen with the codefendant now set for trial on August 15 of this year, 1967, in department 112 and there is a request by this counsel and we ask permission for consolidation for trial." Theodore Cohen said: "Join in the stipulation on behalf of the defendant." The case was continued to August 15 and transferred to department 112.

On August 14, the reconsolidated case involving all defendants was advanced on the calendar of department 112. Dr. Zelechower, Susan and Theodore Cohen, and Peter Knecht appearing for Harry Weiss as counsel for Dr. Zelechower were present. Theodore Cohen announced: "We have a stipulation." Knecht said: "At this time defendant Zelechower waives his right to a jury trial." Theodore Cohen stated: "On behalf of Susan Cohen, whose counsel I am, it is her desire at this time, I understand, to give up her right to a trial by jury and have the matter decided by the Court sitting without a jury; and I individually also waive my right to a jury trial and agree that the matter might be heard by the Court sitting without a jury." Dr. Zelechower and Susan Cohen each personally waived the right to a jury trial. The prosecuting attorney asked: "Theodore A. Cohen, you are in pro. per.?" Cohen answered: "Yes" and then again waived his right to a jury saying: "I waive individually and as counsel." The trial judge then said:

"Just so the record is clear . . . the Defendant Theodore A. Cohen is appearing in pro. per.; is that correct?" Cohen replied: "That is correct, your Honor."

After completion of the jury waiver, Theodore Cohen moved for a continuance stating that: "there will be no problem at arriving at certain stipulations as to testimony that was placed before the grand jury." With the consent of all parties, the matter was continued to October 9. The case was called for trial on October 9. Mr. Knecht said: "Ready for Dr. Zelechower." Theodore Cohen said: "Defendants Cohen are present and ready, your Honor." A stipulation was entered that testimony of certain witnesses before the grand jury might be considered, and the trial commenced. While Dr. Zelechower was represented by separate counsel, in a trial of several weeks the defense was conducted essentially by Theodore Cohen. Dr. Zelechower's attorney waived cross-examination of the key prosecution witness, Fishter, and participated little if at all in the cross-examination of other witnesses. His participation in legal argument in general was limited to joining in motions made by Theodore Cohen.

■ Theodore Cohen now contends that his conviction should be reversed because he did not intelligently waive his right to be represented by counsel and because his substitution in pro. per. for Coleman was defective. Susan Cohen contends that her conviction should be reversed because she was ineffectively represented by counsel who possessed a conflict of interest in the litigation.

■ *Intelligent waiver of counsel by Theodore Cohen.* It is established beyond the need of citation that a defendant in a criminal case is entitled to be represented by counsel, that he may waive that right, and that a waiver of counsel will be effective only if it is knowingly and intelligently made. Application of the principle is, however, considerably more difficult than its articulation. Most of that difficulty arises because the issue of intelligent waiver is essentially a fact question. Where, as here, that fact question arises on appeal and not on writ, it must be decided by a court which does not take evidence often on the basis of a record made without consideration of the issue by the trial court.

■ Fortunately, the case at bench does not come to us on such an inadequate record. The issue of intelligent waiver of counsel was considered by the trial court in connection with Theodore Cohen's motion for a new trial. The judge said: "The court feels that there was a conscious and intelligent waiver of your right, Mr. Cohen, to be represented by separate counsel." We conclude that no other inference may fairly be drawn from the record.

To support a determination that there has been an intelligent waiver of counsel "The record must show . . . that an accused was offered counsel but intelligently and understandingly rejected the offer." (*Carnley v. Cochran,* 369 U.S. 506, 516 [8 L.Ed.2d 70, 77, 82 S.Ct. 884].)

Here the record shows without dispute that Theodore Cohen was fully advised of his right to counsel of his own choosing and to appointed counsel at the time of his first appearance in the superior court. It also is conclusive that Cohen intelligently and understandingly rejected the offer.

Theodore Cohen's waiver of counsel appears clearly from his repeated statements to the trial judge on and after June 1, 1967, that he was appearing in pro. per. He uneqivocally answered that he was so appearing when again queried by the trial judge as the trial was about to commence.

The record leads equally to the conclusion that Cohen's rejection of counsel was knowing and understanding. Theodore Cohen contends that there was a duty on the trial court to repeat the offer of appointed counsel at the time that Coleman, Cohen's privately retained attorney, became unable to serve because of his appointment as a court commissioner. Cohen argues that absent such a repetition by the trial court of his right to appointed counsel no intelligent waiver of that right may be found because the necessary conclusion "may not be presumed from a silent record."

The fallacy of Cohen's argument lies in the fact that the record is not silent. Theodore Cohen is not an ordinary defendant. He at all times here pertinent was an attorney-at-law duly admitted to practice in the courts of California. Cohen was fully informed of his right to counsel of his own choosing or to appointed counsel at the time of his initial appearance. When initially queried by the trial judge concerning his financial ability to employ private counsel, Cohen demonstrated a sophisticated regard for the subtleties of constitutional protection by claiming the privilege of the Fifth Amendment. He then appeared represented by Coleman. When Coleman was no longer able to serve, Theodore Cohen obtained several delays by representing to the court that he was seeking the services of a privately retained attorney. Eventually, he named a "Mr. Davis" as the man who would represent him and again obtained a continuance. When trial was imminent, Cohen stated he was appearing in pro. per. making no further mention of Mr. Davis. He did not at any time waive the privilege claimed by him against disclosure of his financial circumstances, a disclosure necessary to the exercise of the trial court's power to appoint counsel for him.

Most significantly, during the portion of the pretrial proceedings in which Theodore Cohen was nominally represented by Coleman, Cohen was acting as counsel for a codefendant, Susan Cohen. He retained that status throughout the trial. In spite of Coleman's presence at the time of hearing on the

995 motions, and the presence of Dr. Zelechower's counsel at trial, Cohen, acting as attorney for Susan Cohen, for all practical purposes carried the entire burden of the defense. Theodore Cohen made his election to proceed in pro. per. at the same time that he elected, as counsel for Susan Cohen, to stipulate to a reconsolidation for trial of the Susan Cohen prosecution with that of Theodore Cohen and Dr. Zelechower.

What emerges from the record is not a lack of intelligent, understanding rejection of appointed counsel by Theodore Cohen. The contrary is clear. The record discloses that Cohen knew precisely what he was doing. Moreover, the record leads to the fair inference that Theodore Cohen's statements that he was going to obtain counsel and his subsequent election to proceed in pro. per. were part of a contrived plan first to delay the trial and then to create, for the purposes of appeal, the very purported error which he now asserts.

The most that can be said in support of Theodore Cohen's contention is that the record is lacking in magic words uttered by the trial judge after Patrick Coleman was appointed a court commissioner. But due process rights are matters of substance and not of ritual. The record of the case at bench so tested reveals no denial of due process by deprivation of right to counsel.

Appellant Theodore Cohen cites *Bogart* v. *Superior Court*, 60 Cal.2d 436 [34 Cal.Rptr. 850, 386 P.2d 474] for the proposition that we must blind ourselves to the fact that he was an attorney-at-law in determining the factual issue of whether his rejection of appointed counsel was knowing and understanding. *Bogart* does not so hold. Our Supreme Court in *Bogart* construed the record as establishing that the defendant who was an attorney-at-law had indicated to the magistrate conducting his preliminary hearing that he desired to be represented by appointed counsel. (60 Cal.2d 436, 439-440.) It concluded also that the record established that the magistrate had not performed his statutory duty pursuant to Penal Code section 859 to appoint counsel. (60 Cal.2d 436, 439.) Thus while *Bogart* confirms the proposition that "a lawyer who is accused of a crime is equally entitled in every stage of his trial to the presence and aid of counsel . . . with other persons . . ." (60 Cal.2d 436, 440) it does not stand for the proposition that a lawyer's status is irrelevant to the determination of the ultimate fact of the intelligence of an actual waiver of counsel made by him. It particularly does not stand for the proposition that an accused lawyer may, as does Theodore Cohen, seek the best of all worlds by knowingly waiving his right to counsel, proceeding in pro. per. as to himself and vigorously conducting the defense as counsel for a codefendant, all while preserving to himself the claim that he was denied counsel.

■ *Validity of Substitution.* Theodore Cohen asserts that this conviction must be reversed because the record reveals no minute order or writing relieving Patrick Coleman as his counsel pursuant to Code of Civil Procedure sections 284 and 285. The procedure for relief and substitution of an attorney prescribed in those sections is applicable to criminal cases. (*People* v. *Bouchard,* 49 Cal.2d 438 [317 P.2d 971].) Where, however, the record discloses that a substitution of attorneys in fact occurred, a failure to comply with Code of Civil Procedure sections 284 and 285 is not prejudicial. (*People* v. *Donel,* 255 Cal.App.2d 394, 401 [63 Cal.Rptr. 168].)

The record of the case at bench establishes that on June 1, 1967, in department 100 of the Los Angeles Superior Court, Theodore Cohen accomplished a substitution of himself in pro. per. in the stead of Patrick Coleman who had been representing him. Cohen had been granted a series of continuances, first to obtain counsel and then on his representation that he would be represented by a Mr. Davis who was out of town. On June 1 he told the judge: "Your Honor, Mr. Davis is still out of town. I have no objection to appearing in pro. per. at this time so that the matter might be set. It has been put over a few times." The judge replied: "All right. The substitution will have to be effective in the trial court." The case was then set for trial in department 112. Unquestionably, Cohen substituted himself in pro. per. on June 1 while indicating an intention to be represented by Mr. Davis in the future. The trial judge's reference to a further substitution must of necessity refer to Cohen's representation concerning the anticipated substitution of Mr. Davis as his trial counsel. Unless that construction is given to the colloquy of June 1, Cohen's statement to the court that he was then appearing in pro. per. is meaningless. We conclude, therefore, that a substitution having been accomplished, any failure to record it as provided in Code of Civil Procedure sections 284 and 285 is not prejudicial.

■ *Adequacy of Representation of Susan Cohen.* Susan Cohen contends on this appeal that she was deprived of her right to effective counsel because Theodore Cohen who represented her at trial was a codefendant possessing a patent conflict of interest. We conclude that the record shows no effective waiver by Susan Cohen of her right to separate counsel and on that basis reluctantly reverse the judgment as to her.

On the record before us, it is apparent that at the time of the proceedings of January 12, 1967, an obvious and tacitly admitted conflict of interest was of concern to both the trial judge and the prosecutor. The prosecutor moved on that date to disqualify Theodore Cohen from representing Mrs. Cohen. Susan Cohen, in response to the court's admonition of the problems inherent in the situation, resisted the prosecution motion, and moved for a

severance of her case for trial. At that time, there was a clear and knowledgeable waiver of separate counsel on her part.

 There is, however, a duty upon the trial court, to advise of circumstances arising in the course of a trial which indicate a potential conflict of interest between a defendant and his counsel. (*People* v. *Baker,* 268 Cal.App.2d 254, 260 [73 Cal.Rptr. 758].) Here there was a change of circumstance after January 12 which activated a duty to readvise of the potential conflict between Susan Cohen and her codefendant counsel. At the time of Susan Cohen's waiver on January 12, the cases were severed and Susan Cohen's trial was not scheduled until after the trial of Theodore Cohen. Reconsolidation of the cases on July 10, 1967, materially changed the situation to Susan Cohen's detriment. No longer was she in the position of being able to await the determination of guilt or innnocence of her lawyer. She was to be tried with him. The change in circumstances required a new inquiry on the part of the trial judge as to the knowing and understanding nature of her waiver. This inquiry was not made. The resulting silent record compels us to find fatal error in the proceedings.

We do not criticize the trial judge in this respect. Several different judges had presided over much complex pretrial maneuvering in the case. Under the circumstances the error was virtually inevitable unless the prosecutor carefully protected the record. He did not do so. We are cognizant of the possibility that the error which requires reversal was the result of a contrived plan of Theodore and Susan Cohen. If we were free to do so, we would affirm the conviction and require the issue to be raised on writ where a full factual disclosure could be required. The broad sweep of precedent, however, precludes our proceeding in that manner. (*People* v. *Baker, supra,* 268 Cal.App.2d 254, and cases there cited.)

### Insurance Code Section 556

. Citing *In re Williams,* 1 Cal.3d 168 [81 Cal.Rptr. 784, 460 P.2d 984] and *People* v. *Gilbert,* 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580], appellants contend that their conduct is proscribed by Insurance Code section 556, a specific statute, and that therefore it is not punishable under the general grand theft statute. The case at bench does not come within the rule of *Williams* and *Gilbert.*

Our Supreme Court states in *Gilbert* (1 Cal.3d 475, 479): " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' " Where, however, the general statute requires the presence of an element of the crime which is not

required by the special statute the *Williams-Gilbert* rule does not apply. Our Supreme Court states in *Gilbert* (1 Cal.3d 475, 480): "In *People* v. *Phillips,* 64 Cal.2d 574, 581 [51 Cal.Rptr. 225, 414 P.2d 353], we explained that a misdemeanor statute prohibiting 'fraudulent misrepresentations as to cures for cancer' foreclosed a felony prosecution for grand theft under section 484 if the conviction for the misdemeanor offense required that the victim 'actually parted with value.' Since the relevant portion of section 11482 [the special statute involving welfare frauds considered in *Gilbert*] does contemplate that the victim actually part with value, it does, under the *Phillips* test, 'include the same matter' as the grand theft statute and conflicts with it." Grand theft as defined in Penal Code sections 484 and 487 (the general statute) includes within the elements of the crime an essential not contained in Insurance Code section 556 (the special act). Grand theft requires a taking of something of value. A violation of Insurance Code section 556 is complete when a false claim for payment of loss is presented to an insurance company or a false writing is prepared or presented with intent to use it in connection with such a claim whether or not anything of value is taken or received. (*People* v. *Reed,* 190 Cal.App.2d 344, 350, 355 [11 Cal.Rptr. 780].) The existence of the required element of "taking" in the general statute defining grand theft and the absence of that element in the crime of violation of Insurance Code section 556 removes the case at bench from the rule of *Williams* and *Gilbert* upon which appellants rely.

### Defendants' Discovery

*Discovery Motions.* On October 17, Theodore Cohen moved: "That we be permitted inspection of all statements in the possession of the District Attorney, including tape recorded statements, which we know to be in their possession, of Mr. Fishter. We would move to have leave to inspect all those statements in the possession of the District Attorney's Office containing notes or memoranda, admissions or confessions or any statements or other [*sic*] made by Mr. Fishter to the District Attorney or other person." On October 18, the trial court granted the motion and ordered that the district attorney permit inspection and copying of: tape recordings containing Fishter's voice, written statements signed by Fishter or obtained from him, and witness statements of Fishter signed or unsigned. The court also ordered that the inspection must be made by counsel but that the defense investigator might accompany him. It ruled that inspection must be completed by the close of business on October 20.

On October 26, 1967, counsel for Dr. Zelechower filed a written motion for discovery in which Theodore Cohen joined. That motion sought inspection and copying of: all recorded and written statements of the defendant,

Zelechower; all recorded and written statements "of persons including co-defendants, who may or may not be called as prosecution witnesses"; all names and present addresses of eyewitnesses to the crimes charged known to the prosecution; all notes and summaries used by the police and prosecution witnesses to refresh their memories before testifying; all official reports of police officers based on their original notes; all police officers' notebooks "used during investigation of this case," the names and addresses of any confidential informants "not included in the above order"; "any evidence favorable to the defendant [Zelechower], and or which would tend to impeach the People's witnesses, the existence of which is known, or by the exercise of due diligence could become known to the attorney for the People."

The trial court denied that portion of the motion which sought inspection and copying of "any evidence favorable to the defendant, and or which would tend to impeach the People's witnesses, the existence of which is known, or by the exercise of due diligence could become known to the attorney for the People." It granted the remainder of the motion. It ordered that the discovery be conducted on October 27 and October 30 between the hours of 9 a.m. and 5 p.m., and authorized that it be conducted by counsel or any agent authorized by defense counsel in writing.

Discovery was conducted by the defense pursuant to both the order of October 18 and the order of October 26. On October 31, Theodore Cohen moved to dismiss the prosecution and to strike the testimony of Fishter on the ground that the prosecuting attorney had not complied with the discovery orders. He argued: (1) the discovery conducted pursuant to the second discovery order of October 26 revealed material that should have been tendered pursuant to the first order of October 18 and that therefore the prosecution had suppressed evidence; and (2) the prosecution had not fully complied with either discovery order. The trial judge stated that he was unable to determine the factual basis of the motion from the statements made by Cohen and said: "If there is anything further by way of discovery that you desire to make a record on, you may do so. If necessary Mr. Headly [the defense investigator who participated in the discovery] may be called as a witness. The Court has made two very specific discovery Orders, and that is all that is pending at the present time. Those Orders have been made, and until shown to the contrary, the Court will assume that they have been complied with."

Theodore Cohen did not accept the trial judge's suggestion that he call witnesses to support his contention of lack of compliance with the discovery orders. He limited his further showing to eliciting the admission from the prosecutor that the prosecution's file contained work product memoranda

and "intelligence reports" which had not been disclosed. Theodore Cohen did not ask and the prosecutor did not admit that the content of the work product memoranda or the "intelligence reports" contained information of the character ordered discoverable. Rather, Cohen said: "I am not asking to discover work product." The trial court in effect denied Mr. Cohen's motion.

On November 7, during cross-examination of a prosecution investigator, it developed that two reports, one dated June 14, 1966, and the other dated October 24, 1966, had not been produced pursuant to the discovery orders. A letter from Fishter to the prosecution's investigator also had not been produced. At the request of the defense, the documents were ordered produced and marked for identification as defense exhibits. The investigator who had been in possession of the three documents testified that he had not deliberately withheld them.

Appellants now contend[4] that the trial court erred prejudicially in: (1) denying a portion of their discovery motion of October 26; and (2) denying their motion to dismiss the prosecution and strike testimony. They contend also that their convictions must be reversed because the prosecution failed to comply with the discovery orders. The record does not support those contentions.

On October 26, Dr. Zelechower moved to discover a number of specific categories of material and "any evidence favorable to the defendant and or which would tend to impeach the People's witnesses, the existence of which is known, or by the exercise of due diligence could become known to the attorney for the People." Theodore Cohen joined in the motion presumably on behalf of himself and Susan Cohen. The trial court denied the motion to the extent that it pertained to the quoted language but granted it in all other respects. The trial court's ruling was correct.

The wording describing the material sought to be discovered renders the motion to inspect such material fatally defective. Appellants sought not only evidence in possession of the prosecution but also evidence which could be found by the exercise of due diligence. Compliance with a discovery order phrased in the terms of the motion would have required the prosecution to prepare the case for the defense. That is an obligation not imposed by the law. The trial court thus would have exceeded its power had it granted the questioned portion of the discovery motion.

It is significant also that the motion in question was made on behalf of

---

[4]Appellants also argue that the provisions of the October 18 order requiring counsel to be present at the inspection is prejudicially erroneous. The argument is totally without merit.

Dr. Zelechower. While appellants joined in it, we seriously question that one defendant may claim prejudice from the denial of a discovery motion seeking evidence of innocence of a codefendant unless he independently establishes that his own preparation would have been aided by the disclosure. Appellants make no such showing here.

■ Appellants' motion to dismiss and to strike testimony for failure of compliance with the discovery order of October 18 was properly denied. There is a considerable area of ambiguity in the order of October 18, phrased as it is in the terms of appellants' motion. At the time the trial court denied the motion, the only showing that appellants had made in support of it was that there had been a few days' delay in producing documents conceivably called for by the motion, but which in fact were produced at a later time in response to a subsequent motion. Although invited to do so by the trial court, appellants failed to establish any further basis for their motion to dismiss and to strike testimony. Neither did they seek to establish any factual basis for a conclusion that the delay had been prejudicial to them. In view of their own delay in seeking discovery until the trial was well along, appellants would undoubtedly have been hard put indeed to make such a showing had it been attempted.

Appellants' argument that the eventual disclosure of the three documents on November 7 establishes a prejudicially erroneous failure of the prosecution to comply with the two discovery orders is equally without merit. The record reveals no deliberate suppression of evidence. In view of the complexity of the case and the breadth of the court orders, worded as requested by appellants, mistake in compliance was more likely than not. The record fails totally to disclose in what fashion appellants were prejudiced by the late disclosure of the three documents. We conclude that where as here the prosecution has inadvertently failed to comply completely with a discovery order in a fashion that has not prejudiced the defense, prejudicial error justifying a reversal of a conviction has not occurred.

■ *Subpena duces tecum.* Appellants contend that the trial court erred prejudicially in granting in part a motion made by the prosecution to quash a subpena duces tecum served by Theodore Cohen upon the custodian of records of State Farm. The application for subpena duces tecum seeks to require the production of "All books, records, documents and files . . ." (par. 1) and "all drafts or checks issued by adjuster Jacob Franz Fishter . . . from January 1, 1960 to date." (Par. 2.) The prosecution moved to quash the subpena duces tecum upon the ground that the matter sought was not material to the subject matter of the action. On October 5, 1967, the court granted the motion as it pertained to paragraphs 1 and 2 of the application. The trial judge stated: "With respect to Paragraphs 1 and

2 of the subpena, the motion is granted at this time with prejudice to the renewal of a request for a subpena, but this limitation is imposed: Henceforth the Defendants Theodore Cohen and Susan Cohen may not apply for a subpena to the clerk involving matters that would be in the purview of that which was covered in 1 and 2; such application must be made to the Court with notice to counsel." Appellants made no motion to the court seeking the matter described.

We find no error in the ruling of the trial court. The category described in paragraphs 1 and 2 was so broad as to include matter clearly not material to the subject matter of the litigation. Under no stretch of the imagination could it be said that all of the files of State Farm were connected with the trial in some way. Similarly, although to a lesser extent, the category "all drafts issued by Fishter since 1960" described matter on which no showing of relevancy had been made. The trial judge, complying with his duty to supervise discovery, in effect invited Mr. Cohen to correct the defect by noticing a motion by which the description of matter to be produced could be refined. Cohen did not choose to follow that procedure. Appellants may not, under these circumstances, assert that the ruling of the trial court was either erroneous or prejudicial.

We thus conclude that reversal of the case at bench is not indicated by the rulings of the trial judge with respect to the subpena duces tecum.

### Continuances

Appellants contend that the trial court committed prejudicial error in denying certain of their motions for a continuance. The contention is without merit.

Appellants were indicted on September 27, 1966, and made their first appearance in court on October 3. Through long pretrial maneuvering, including many continuances granted appellants, the actual trial did not commence until October 9, 1967, over one year later. Appellants now contend that the trial court erred in failing to grant still further continuances. Our examination of the record indicates that the trial court did not abuse its discretion by refusing additional delay. Delay is not a legitimate tactic of criminal defense. (See Pen. Code, § 1050; Witkin, Cal. Criminal Procedure (1963) § 278.) The trial court was justified in concluding that appellants' motions for continuance, which it denied, were made primarily for the sake of delay.

At one point in the proceedings, Theodore Cohen was held in contempt of court by a different judge in an unrelated proceeding. He was sentenced to two days in the county jail but permitted to serve the sentence in the court-

room. As a result, Cohen was incarcerated during two lunch periods of the trial and spent one night in jail. A one-day continuance was granted after Cohen's night in jail when the trial court accepted Cohen's statement that he was unable to proceed in the trial.[5] Immediately after he was adjudged in contempt, Theodore Cohen sought a continuance of the case at bench so that he might devote all his energies to an attack upon the contempt adjudication. The court refused the continuance. Appellants now assert that the trial court erred prejudicially in so doing.

We find no error in the ruling of the court. Our system of criminal justice is severely threatened by the tactics of disruption and delay adopted by some few counsel and defendants. To permit a defendant and his counsel to achieve undue delay out of contemptuous conduct of counsel is to participate in the attempted destruction of that system. We, as did the trial court, refuse to permit ourselves to be so used. We conclude that the trial judge properly limited the continuance granted appellants to the absolute minimum necessary to permit Theodore Cohen to operate as counsel in spite of his incarceration for contempt.

### The Conviction of Theodore Cohen of Conspiracy by the Court While Acquitting Those Charged as Coconspirators

Appellant Theodore Cohen contends that the acquittal of Susan Cohen and Dr. Zelechower on the conspiracy charges operated as an acquittal of him on that charge, relying on the case of *People* v. *James,* 189 Cal. App.2d 14 [10 Cal.Rptr. 809, 91 A.L.R.2d 697]. While that case states the general proposition that "The rule is well settled that one defendant in a prosecution for conspiracy cannot be convicted where all of his alleged co-conspirators, be they one or more, have been acquitted, or discharged under circumstances that amount to an acquittal. [Citation omitted]" (*People* v. *James,* 189 Cal.App.2d 14, 16-17 [10 Cal.Rptr. 809, 91 A.L.R.2d 697]), the case as a whole is not helpful to appellant's position. In *James, supra,*

---

[5]The exact chronology involved in the incarceration of Theodore Cohen for contempt is as follows: November 8, 1967, Theodore Cohen arrived in court at 11 a.m. in the custody of the sheriff, having been found in contempt in another department and ordered to serve two days. The morning session was adjourned without any proceedings, with the trial judge denying Theodore Cohen's motion for continuance. Cohen was in custody that noon recess. When court reconvened at 1:30 p.m., a brief recess was granted while Cohen was permitted to attend to some business in another department. The session was resumed at 2:20 p.m. After the close of that session, Mr. Cohen was apparently released from the sheriff's custody pursuant to a stay of the contempt sentence. He was taken back into custody during the lunch break on November 13, the stay order having been vacated. He was in technical custody during that afternoon session of the trial and was transported to jail, where he spent the night of November 13. The following morning, upon returning to court after his night in custody, a requested continuance was granted.

there were only two alleged coconspirators and the charge failed to include the catch-all phrase that the defendant was also involved with "other persons unknown." The granting of the new trial and subsequent dismissal of charges against the coconspirator left James, indeed, in the position of "conspiring with himself."

More directly in point is *People* v. *Sagehorn,* 140 Cal.App.2d 138 [294 P.2d 1062]. In *Sagehorn,* although the defendant's two codefendants were acquitted, the indictment charged that defendant Sagehorn had conspired with "other persons to the grand jury unknown." In finding that the charge and conviction were sufficient, the court stated that the essential element was the existence of evidence "from which it can be inferred that persons other than the codefendants conspired with appellant . . ." (*People* v. *Sagehorn,* 140 Cal.App.2d 138, 146 [294 P.2d 1062].)

In the case at bench, the charging language of count 1 of the indictment includes the catch-all language, "conspired with other diverse persons." The evidence discloses a conspiracy between Theodore Cohen and Fishter. The acquittal of the two specifically named codefendants thus does not operate to acquit Mr. Cohen.

Appellant Theodore Cohen also contends that since the identity of Fishter was known to the grand jury and to the prosecution at the time of the indictment, the identity of the "others" was not "unknown" and, therefore, the particular language ("other diverse persons") does not suffice to satisfy the required naming of the alleged coconspirators.

We disagree. The need for specificity of charges goes to the right of the defendant to receive notice so that he may have an opportunity to prepare his defense. The requirement is satisfied by a pleading in general terms where the defendant is furnished a transcript of the grand jury proceedings at which the indictment was returned. (Witkin, Cal. Criminal Procedure (1963) § 185.) Appellant had a copy of that transcript long before the cause came to trial. He was not required to meet any issues of which he did not have notice. If there was any defect or ambiguity in the language of count 1, it was not prejudicial to him. (*People* v. *Hardeman,* 244 Cal.App.2d 1, 19 [53 Cal.Rptr. 168].)

### *Other Contentions*

We conclude that appellants' other contentions are without merit and treat them briefly in the appendix to this opinion.

### *Fair Trial*

Our examination of the record reveals overwhelming evidence of

the guilt of Theodore Cohen. It equally reveals a trial that was eminently fair under circumstances made difficult for the trial judge by Mr. Cohen. If any error crept into his trial, it was nonprejudicial beyond a reasonable doubt.

The Right Honorable The Lord Diplock, Lord of Appeal in Ordinary, a distinguished objective observer of American jurisprudence, has remarked that our reviewing courts in criminal cases seem at times to have adopted the principle of the irrelevancy of guilt. (Appellant Judges' Seminar, 1970 Conference of Cal. Judges.) A reversal of the conviction of Theodore Cohen would carry that principle to an as yet unheard of extreme.

## Judgment

While the indictment charges Theodore Cohen with conspiracy only in count 1, the judgment recites his conviction of conspiracy in violation of counts 1, 2, and 3. That clerical error must be corrected.

■ There is another error in the judgment. Theodore Cohen was convicted of conspiracy to commit grand theft as charged in count 1 of the indictment and of nine separate counts of grand theft. He was sentenced to state prison for the term prescribed by law on each count, the sentences to run concurrently. We conclude that the sentences, as so imposed, violate the prohibition upon multiple punishment set forth in Penal Code section 654. Our Supreme Court has stated that the prohibition of section 654 is violated by a sentence which imposes punishment for conspiracy to commit illegal acts and for the illegal acts themselves if the conspiracy has no objective other than the specific acts charged. (*In re Cruz*, 64 Cal.2d 178 [49 Cal. Rptr. 289, 410 P.2d 825].) Here the objective of the conspiracy was the commission of the acts of grand theft of which Theodore Cohen was convicted. The judgment must be modified to correct this error.

## Disposition

The judgment of conviction of appellant Susan Cohen is reversed. The judgment of conviction of appellant Theodore Cohen is modified to read as follows: "Whereas the said defendant having been duly found guilty in this court of the crime of violation of section 182.1 and 4, Penal Code, a felony, as charged in count 1 of the indictment, and grand theft (Sec. 487.1 PC), a felony, as charged in each of counts 2, 3, 4, 5, 8, 9, 11, 12, and 14, it is therefore Ordered, Adjudged and Decreed that said defendant be punished by imprisonment in the State Prison for the term prescribed by law on said counts. Execution of the sentence on counts 2, 3, 4, 5, 8, 9, 11, 12, and 14

is stayed, the stay to become permanent upon the satisfaction of the sentence on count 1." The judgment as modified is affirmed as to Theodore Cohen.

Lillie, Acting P. J., concurred.

## Appendix

Contentions of bias and impropriety of conduct by grand jury (Nos. VIII, IX, XVII, XVIII in appellants' brief) are not supported by the record or the law. (Pen. Code, § 910; *In re Ruef*, 150 Cal. 665 [89 P. 605]; *People* v. *Kempley*, 205 Cal. 441 [271 P. 478]; *People* v. *Jefferson*, 47 Cal.2d 438 [303 P.2d 1024].)

Contentions that judge hearing 995 motion should have disqualified himself although not challenged (Nos. XI, XII in appellants' brief) are contrary to law. (*People* v. *Aubrey*, 11 Cal.App.3d 193 [89 Cal.Rptr. 596].)

Contentions that there is insufficient competent evidence to support the indictment (Nos. XIII, XIV, XV, XVI, XIX in appellants' brief) are not supported by the record.

Contentions of invalidity of the form of the indictment (Nos. XX, XXI, XXII, XXIII, XXV, XXVI, XXVII, XXVIII in appellants' brief) are unsupported. (See 1 Witkin, Cal. Procedure (1954) §§ 176, 186, and cases there cited.)

Contention that trial court refused to permit defense to make an opening statement (No. XXXVI in appellants' brief) is unsupported by the record.

Contention that trial court improperly refused to permit defense to re-open (No. XLII in appellants' brief) is unsupported.

Contention that Mr. Cohen was incompetent during the trial (No. XLV in appellants' brief) is totally unsupported.

Contention that court permitted a witness to "volunteer" a statement (No. XLVII in appellants' brief) is frivolous.

Contention that court improperly excluded the defense investigator from the counsel table during critical stages of the trial (No. XLVIII in appellants' brief) is contrary to the record.

Contentions that defendants were precluded from testifying in their own behalf and otherwise precluded from producing evidence (Nos. XLVI, L in appellants' brief) are not supported by the record.

Contentions that trial judge was prejudiced against appellants and that

the prosecutor introduced anti-semitism into the trial (Nos. XLIX, LXII, LXIII in appellants' brief) are totally contrary to the record.

Contentions that trial court precluded appellants from making motions (Nos. LI, LII in appellants' brief) is contrary to the record.

Contention that trial court adopted an improper procedure for introduction of documents (No. LVII in appellants' brief) is contrary to the record.

Contention that transcript of grand jury proceedings was improperly marked (No. LVIII in appellants' brief) is frivolous.

Contentions that Cohen's out of court statements were improperly admitted (Nos. LVIX, LX, LXI in appellants' brief) are contrary to law. (Witkin, Cal. Criminal Procedure (1969 Supp.) §§ 361E-1 - 361F-2, and cases there cited.)

Contentions that prosecution suppressed evidence at trial and before grand jury (Nos. LXXIV, LXXV, LXXVI, LXXVII in appellants' brief) are not supported.

Contentions that testimony of Fishter was perjurious and that conviction not supported by evidence (Nos. LXXVIII, LXXIX, LXXX, LXXXI, LXXXII, LXXXIII, LXXXIV, LXXXV, LXXXVI, LXXXVII, LXXXVIII in appellants' brief) are contrary to the record.

Contentions of prejudicial misconduct of the prosecutor (Nos. XC, XCI, XCII, XCIII, XCIV in appellants' brief) are not supported by the record.

Contention that trial court should have made specific findings (No. XCVIII in appellants' brief) is contrary to law.

Contention that trial court improperly refused a transcript prior to motion for a new trial (No. XCIX in appellants' brief) is contrary to the record.

Contentions that appellants were prejudiced by an ex parte communication by prosecutor to judge at time of sentencing (Nos. C, CI, CIII in appellants' brief) are contrary to the record which shows that the judge did not read the communication.

Contention that appellants were precluded from addressing the court prior to sentence (No. CIV in appellants' brief) is not supported.

Contentions that denial of probation and a new trial is improper (Nos. CV, CVIII in appellants' brief) are not supported.

**FOURT, J.**[*]—I dissent from the judgment of conviction against Theodore A. Cohen (hereafter referred to as Cohen) and concur in the judgment of reversal with reference to Susan Cohen.

First of all a chronological recital of some of the appearances of the defendants in the various departments of the superior court and what was said and done there is necessary to an understanding of Cohen's contention as to whether he was advised of his constitutional rights and as to whether there was a knowledgeable and intelligent waiver thereof.

| Date | Event |
|---|---|
| September 27, 1966 | Indictment returned. |
| October 3, 1966 Deputy District Attorney Joseph Orr | Each of the defendants was in court (Dept. 100) where they were advised of their constitutional rights.[1] The case was then continued to October 10, 1966. |
| October 10, 1966 Deputy District Attorney Joseph Orr | (Dept. 100) Patrick Coleman, an attorney at law, appeared for Theodore Cohen and Dr. Zelechower and Theodore Cohen appeared as attorney for Susan Cohen. The judge expressed the view that it might be questionable under the circumstances for Theodore Cohen to represent Susan Cohen. The parties were handed copies of the indictment and the matter was continued to November 3, 1966 for pleas. |

[*]Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]"THE COURT: Theodore Cohen, Richard Zelechower, and Susan Cohen, it is my duty to advise each of you that you are entitled to the following constitutional rights.

"Each of you is entitled to a speedy and a public trial.

"Each of you is entitled to counsel.

"Each of you is entitled to face those people who will testify against you and to cross-examine them through your attorney.

"You also have the right to the subpoena power of the Court to obtain witnesses on your own behalf.

"Each of you has the right to the assistance of counsel of your own choosing at

| Date | Event |
|---|---|
| November 3, 1966<br>Deputy District Attorney<br>H. Stanley<br>Coleman for Cohen and Zelechower | (Dept. 100) Cause continued to November 17, 1966. |
| November 17, 1966<br>Deputy District Attorney<br>H. Stanley<br>Coleman for Cohen and Zelechower | (Dept. 104) Argument as to construction and selection of grand jury and argument as to the indictment. |
| November 18, 1966<br>Deputy District Attorney<br>H. Stanley<br>Coleman for Cohen and Zelechower | Motion under section 995, Penal Code denied—continued to November 28, 1966. |

all stages of the proceedings against you, and, if you are unable to afford an attorney, the Court will appoint an attorney for you.

"You also have the right to reasonable bail.

"Mr. Cohen, do you have any questions as to your constitutional rights?

"DEFENDANT T. COHEN: No.

" . . . . . . . . . . . . . . . .

"MR. ORR: Mr. Cohen, are you representing yourself?

"DEFENDANT T. COHEN: No, I am not.

"MR. ORR: Who is your attorney, sir?

"DEFENDANT T. COHEN: I don't have one.

"THE COURT: Do you have the money to hire an attorney, Mr. Cohen?

"DEFENDANT T. COHEN: Your Honor, I prefer not to state that at this time on the grounds that it may tend to incriminate me. I would ask the Court for a continuance. I don't at this time even know what the charges are.

"THE COURT: All right. At this time you do not wish the Court to appoint an attorney for you?

"DEFENDANT T. COHEN: No, your Honor. I believe that I will have counsel, but not knowing the charges, I haven't had a chance to discuss it.

"THE COURT: You are a member of the State Bar. The Court finds, at least for this appearance, you are capable of making an intelligent—You do wish to represent yourself at this proceeding only?

"DEFENDANT T. COHEN: No, I don't.

"THE COURT: You don't wish to represent yourself?

"DEFENDANT T. COHEN: No, I don't. I am asking for a continuance so that I might obtain counsel.

"THE COURT: You pose a problem for the Court. You can't be arraigned without an attorney which you insist upon. How are you to know the charge if you don't have the documents?

"DEFENDANT T. COHEN: I don't, but I certainly don't want to become my own attorney of record.

" . . . . . . . . . . . . . . . .

"THE COURT: . . . . As to Theodore Cohen, the matter will be continued to October the 10th at 9:00 A.M. for arraignment and plea.

"I urge each of you to have an attorney here on October the 10th to save any further delay in this matter.

"October the 10th, 9:00 A.M. for arraignment and plea."

| *Date* | *Event* |
|---|---|
| November 28, 1966<br>Deputy District Attorney<br>H. Stanley<br>Coleman for Cohen and Zelechower | (Dept. 100) Hearing on demurrer set for December 8, 1966—later continued to December 22, 1966—then continued to December 29, 1966—then to January 9, 1967. |
| January 9, 1967<br>Deputy District Attorney<br>H. Stanley<br>Coleman for Cohen and Zelechower | (Dept. 6) Demurrer overruled—cause transferred to department 100 for arraignment and plea and continued to January 12, 1967. |
| January 12, 1967<br>Deputy District Attorney<br>H. Stanley<br>Coleman for Cohen and Zelechower | (Dept. 100) Motion of Susan Cohen to sever granted. She pleaded not guilty, cause continued to March 8, 1967, in department 101 for trial. Theodore Cohen and Zelechower pleaded not guilty and continued for trial in department 103. At this proceeding the prosecutor objected to the severance stating that there "is an obvious conflict of interest." Each defendant pleaded not guilty to each count of the indictment. |
| February 15, 1967<br>Deputy District Attorney<br>H. Stanley<br>Attorney Cooperman for Coleman as attorney for Cohen and Zelechower | (Dept. 103) Cases of Theodore Cohen and Zelechower continued to April 10, 1967. |
| March 6, 1967<br>Deputy District Attorney<br>H. Stanley<br>Cohen for Susan Cohen | (Dept. 101) Trial of Susan Cohen continued to April 24, 1967. |
| April 4, 1967<br>Deputy District Attorney<br>H. Stanley<br>Coleman not present as attorney for Cohen | Case of Theodore Cohen and Zelechower continued to May 15, 1967 for trial. It was announced in court by the prosecutor that Coleman, the attorney of Theodore Cohen and |

| *Date* | *Event* |
|---|---|

Zelechower, had been appointed to a judicial position and that, in effect, he could no longer represent those defendants. Coleman was not present in the court at that time—both defendants were present. The question of a substitution of attorneys or of relieving Coleman was suggested and the prosecutor stated in effect that the defendants were "aware of their position" and they could "handle the responsibilities for obtaining new counsel." Each defendant stated, in effect, that such was agreeable to him. The judge declined, in effect, to relieve Coleman unless he participated in such proceeding.

**April 24, 1967**

(Dept. 101) Case of Susan Cohen continued to May 22, 1967, for trial.

**May 11, 1967**
**Deputy District Attorney**
**H. Stanley**
**Coleman not present as attorney for Cohen**

(Dept. 103) Announced by Theodore Cohen that he was attorney for Susan Cohen and he was also a defendant and that he had heard that department 103 would be dark during the time the case was previously set for trial. Cohen stated that Coleman had been appointed to a judicial positon, that he had discussed the matter of representation of himself with several attorneys—Cohen further stated that he and the doctor had no attorney, that he was seeking other counsel, having talked with six or seven attorneys, that he could not pay the fees which some had quoted, but that he was in the "process of attempting to find counsel." When questioned by the judge about a proceeding, which Cohen had instituted

| Date | Event |
|------|-------|
| | in the United States Supreme Court with reference to this case, Cohen made it clear that he was answering presently as a defendant and not as counsel and that he was not representing himself in the case at bench. Cohen again called particular attention to the fact that "we have no counsel." The case was transferred to department 100 to May 18, 1967, for trial setting. |
| May 18, 1967<br>Deputy District Attorney<br>M. Harris | (Dept. 100) The clerk's minutes show that Theodore Cohen and Zelechower appeared (they being the only persons who were so directed to be present) without counsel and the case was continued over to May 25, 1967. The court reporter's transcript shows that Susan Cohen was in court and made several statements to the judge with reference to what occurred in department 103 on May 11, 1967. It appears obvious that one of the transcripts is grossly in error. |
| May 19, 1967<br>Deputy District Attorney<br>W. Sweeters | (Dept. 100) Bail forfeiture of Theodore Cohen set aside and bail reinstated. |
| May 19, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 101) Susan Cohen proceeding continued to May 24, 1967. |
| May 24, 1967 | (Dept. 101) Matter of Susan Cohen, represented by Theodore Cohen, called for hearing and continued to May 26, 1967. |

| Date | Event |
|---|---|
| May 25, 1967<br>Deputy District Attorney<br>M. Harris | (Dept. 100) Theodore Cohen and Zelechower appeared without counsel. Judge announced that cause was in court for "substitution of counsel." Cohen replied "I think we could have counsel by Monday." The case was continued to May 29, 1967. |
| May 26, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 101) Susan Cohen's case continued to May 29, 1967. |
| May 29, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 101) Susan Cohen's case continued to May 31, 1967. |
| May 29, 1967<br>Deputy District Attorney<br>M. Harris | (Dept. 100) Theodore Cohen and Zelechower appeared without counsel. Cohen stated that Mr. Weiss' firm was to represent Zelechower and Mr. Davis was "going to represent me." Davis was apparently not present in court on the matter. Case then continued to June 1, 1967, for trial setting. |
| May 31, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 101) Case of Susan Cohen set for trial on July 10, 1967. |
| June 1, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 100) H. Weiss appeared for Zelechower. Discussion with reference to Theodore Cohen—Cohen stated that Davis was "still out of town" but that he, Cohen, would have "no objection to appearing in pro. per. at this time so that the matter might be set." The judge called attention to all concerned that the substitution of attorneys for Cohen would have to be effected in the trial department and that the |

| Date | Event |
|------|-------|
| | cause "should be advanced formally for that purpose so there is no question of the substitution being effected." Clerk's transcript recites Cohen appeared in propria persona "this date only." Case of Theodore Cohen and Zelechower then set for trial on August 15, 1967. |
| July 10, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 101) Case of Susan Cohen called for trial. Prosecutor made a motion to continue and to reconsolidate the case with the case of Theodore Cohen and Zelechower set for trial on August 15, 1967, in department 112. Court so ordered. |
| August 14, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 112) All defendants were in court. Peter Knecht, apparently from Weiss' office, appeared for Zelechower. Theodore Cohen appeared as attorney for Susan Cohen. Theodore Cohen further stated, "and I individually also waive my right to a jury trial and agree that the matter might be heard by the court sitting without a jury." Thereupon all parties and counsel present waived a jury trial. Cohen stated that he appeared in pro. per. for himself and as attorney for Susan Cohen. Cohen explained and said to the judge that Coleman had previously represented Zelechower and him and upon Coleman's appointment as a commissioner "we were left without counsel. I do assume that I will have counsel for me at these proceedings when they come about" and the judge replied "all right." Cases then continued to October 9, 1967, for trial. |

| Date | Event |
|------|-------|
| October 9, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 119) All parties present in court. Knecht, for H. Weiss, representing Zelechower and Theodore Cohen representing Susan Cohen. Theodore Cohen appearing individually without counsel. Stipulated that transcript of grand jury proceedings be received, subject to court's rulings, each side to have right to submit other evidence. Case continued to October 16, 1967. |
| October 16, 17, 18, 19, 20, 23, 24, 25, 26, 31, November 1, 2, 3, 7, 8, 9, 10, 13, 14, 15, 16, 20, 21, 22, 1967 | (Dept. 119) Trial of case. Each day thereof Theodore Cohen appeared in propria persona, and as attorney for Susan Cohen. H. Weiss, or a representative from his office, appeared for Zelechower. |
| November 28, 1967<br>Deputy District Attorney<br>H. Stanley | (Dept. 119) Theodore Cohen and Susan Cohen found guilty as heretofore indicated. Probation reports ordered. |
| January 16, 1968<br>Deputy District Attorney<br>H. Stanley | (Dept. 11) Motion for new trial made by Theodore Cohen for himself individually and as attorney for Susan Cohen. Cohen was advised by the court: "Incidentally, Mr. Cohen, you are aware that you have a right under the Federal and State Constitutions to be represented by counsel of your choice at all stages of the criminal proceedings pending against you?" Cohen replied: "I understand that *at this time.*" Cohen then in answer to the judge's questioning stated that he would ask leave to appear as counsel in his own behalf insofar as the proceedings of the day were concerned but *that such waiver of counsel was "not a retrospective* |

| *Date* | *Event* |
| --- | --- |

*waiver in any sense," that the waiver was not to be considered a waiver of any other prior time or occasion.* The judge later stated *"the court feels that there was a conscious and intelligent waiver of your right, Mr. Cohen, to be represented by separate counsel. Whether or not that decision is supportable will rest upon the Appellate Courts."* (Italics added.) The judge indicated that he was relying upon the advice given at the arraignment on October 3, 1966, and upon what was stated at the proceedings on August 14, 1967 (jury waiver)—and Cohen's statement "I do assume that I will have counsel for me at the trial."

In considering the contention of Cohen to the effect that he never made a proper waiver of his right to counsel under the circumstances the Attorney General argues that, in effect, Cohen was advised of his constitutional rights at the time of the arraignment on October 3, 1966, and that he appeared in propria persona on occasions and indicated that he intended to secure private counsel and therefore it was unnecessary to advise him any further at any time.

In *People* v. *Cummings,* 255 Cal.App.2d 341 [62 Cal.Rptr. 859], the defendant stated at the preliminary hearing that he desired to represent himself; at the trial there was no inquiry by the court with reference to a waiver of counsel. The appellate court said (pp. 345-346): "To establish that counsel was effectively waived, it must be shown that the accused was offered counsel *and that he intelligently and understandingly waived his right.* [Citations.] 'The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' [Citations.] This determination must be made before any plea is accepted by the trial court. [Citations.] *The courts will not lightly find that there has been a waiver and will indulge in every reasonable presumption against a waiver of a fundamental constitutional right.* [Citations.]

" 'In order for a trial judge to determine whether there has been a com-

*petent and intelligent waiver of counsel, he must first ascertain whether the defendant clearly understands the nature and effect of his waiver.'* [Citations.] *More than a superficial inquiry is required of the trial court.* [Citations.]

"A waiver cannot be accepted 'from any one accused of a serious public offense without first determining that he "understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted." ' [Citations.] While this determination is for the trial judge to make, in the present case no attempt was made at any stage of the proceedings below to inquire into appellant's ability to defend himself or into his understanding of the offense charged—its nature, pleas, defenses, or punishment. [Citations.] . . . A waiver 'may be made only by a defendant who has been apprised of his rights and who has "an intelligent conception of the consequences of his act." ' [Citations.]" (Italics added.)

The fact alone that Cohen was an attorney at law should be of no particular consequence. It is quickly observed by a reading of the record in this case that Cohen (as the saying goes) had a fool for a client when he represented himself, but in addition to that, the whole mess was compounded and made worse, when at the same time he was permitted to represent his wife as her counsel. It was a situation which cried out for correction at the very first and the problem was alluded to by several of the judges prior to the time of trial. In *Bogart* v. *Superior Court*, 60 Cal.2d 436 [34 Cal. Rptr. 850, 386 P.2d 474] it is stated that the judge of the court must take the initiative in ascertaining whether there is a valid waiver and that responsibility does not shift simply because the defendant happens to be an attorney and that a lawyer who is accused of a crime is equally entitled in every stage of his trial to the presence and aid of counsel the same as other persons. In other words, the rights of individuals in this respect are not to be gauged by their profession or occupation. The majority in this case, in effect, attempt to carve out an exception to the rules laid down by the Supreme Court of the United States and the Supreme Court of California. The guidelines, under their proposed exception, are so impossibly vague and unpredictable as to provide no standard at all. It is common knowledge that there are many attorneys at law who represent companies, banks, trust companies and those who restrict their practice to probate matters who are and would be completely lost in the maze of criminal law as of today. Yet under the proposed new standards if one of such attorneys were charged with a crime he would not be entitled to the same advantages that a learned, nonattorney recidivist robber or burglar would receive in our courts today.

Cohen asserts, in effect, and properly so, that there never was a substitution of attorneys after Coleman left the case. It does clearly appear that Coleman entered the case on October 10, 1966, and continued therein as the attorney for Cohen and Zelechower until shortly before the call of the case in department 103 on April 4, 1967. Coleman never appeared as counsel for Cohen after that date.

The judge in that department at that time indicated quite clearly upon being advised of Coleman's appointment to a judicial position that a substitution of attorneys would have to be made. No claim is made by the prosecution that anything was ever filed with the clerk pursuant to the provisions of section 284, Code of Civil Procedure and no claim is made that sections 284 and 285 of the Code of Civil Procedure were ever complied with. In *People* v. *Bouchard*, 49 Cal.2d 438 [317 P.2d 971], it was established that the procedural requirements of the above mentioned sections govern the change of an attorney in a criminal as well as a civil proceeding. As stated in *People* v. *Prince*, 268 Cal.App.2d 398 [74 Cal. Rptr. 197]: " 'Having undertaken the defense of a criminal case an attorney must continue with his services until he is released by the client or by the court. He may apply to the court for release from further services and for good cause shown may be released, but he may not abandon his representation at will, nor for considerations personal to himself.' [Citations.] The question of granting or denying an application of an attorney to withdraw as counsel (Code Civ. Proc., § 284, subd. 2) is one which lies within the sound discretion of the trial court 'having in mind whether such withdrawal might work an injustice in the handling of the case.' [Citations.]"

Even assuming that by some legal legerdermain, Coleman was properly released as Cohen's attorney, it nevertheless became the duty of the court to advise Cohen properly and fully of his constitutional rights. It was evident that Coleman never was in court representing Cohen after February 15, 1967.

The record in this case is completely barren of any finding, prior to the conclusion of the trial, let alone an *unqualified finding,* by any judge of any court or department thereof that Cohen had waived his right to counsel and repeatedly it has been held that we cannot presume acquiescence in the loss of fundamental rights.

It may be that Cohen adroitly avoided ever having the matter properly concluded by asking for counsel or by seeking permission to represent himself or any of a number of other proper procedures; however, the record does seem to indicate that never did he ask for a continuance for the purposes of getting counsel after Coleman left the case. The sides were

equally guilty of the worst sort of dilatory tactics, as evidenced by the chronology of events.

The Attorney General contends that on January 16, 1968, *after the trial,* and on the motion for a new trial, the judge told Cohen of his constitutional rights and that such advice at that time should suffice. The records seem to indicate that the judge who heard the matter (after the trial and the finding of guilt) attempted to secure a waiver from Cohen which would be retroactive. Cohen made it clear, however, that he would make no waiver which would be so applied. As Cohen suggests in his brief, if there was a good waiver on his part at a previous occasion or occasions why was it necessary to get a retroactive waiver at the time of the motion for the new trial proceedings.

The law as stated in *Carnley* v. *Cochran,* 369 U.S. 506, 513-516 [8 L.Ed.2d 70, 76-77, 82 S.Ct. 884], is the law this court ought to follow. There the court said, among other things: "But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request. In *McNeal* v. *Culver,* 365 U.S. 109 [5 L.Ed.2d 445, 81 S.Ct. 413] *supra,* the petitioner's allegation that he had requested counsel was countered by a denial in the return that 'petitioner's constitutional rights were violated by the court's alleged refusal to appoint counsel in his behalf,' and the State Supreme Court noted that the record was silent as to any request. We held that *when the Constitution grants protection against criminal proceedings without the assistance of counsel, counsel must be furnished 'whether or not the accused requested the appointment of counsel. Uveges* v. *Pennsylvania,* 335 U.S. 437, 441.' [Citations.]

"...................................

" 'It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." '

" '*The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.* While an accused may waive the right to counsel, *whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.*'

"We have held the principles declared in *Johnson* v. *Zerbst* equally applicable to asserted waivers of the right to counsel in state criminal proceed-

ings. . . . *Presuming waiver from a silent record is impermissible.* The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (Italics added.)

In *People* v. *Carter,* 66 Cal.2d 666, 669-670 [58 Cal.Rptr. 614, 427 P.2d 214], the court stated: "Speaking of the right to counsel and the effective waiver thereof, we declared in *People* v. *Douglas* (1964) 61 Cal.2d 430, 434-435 [38 Cal.Rptr. 884, 392 P.2d 964]: ' "The right to counsel is a fundamental constitutional right, which has been carefully guarded by the courts of this state." (*In re James,* 38 Cal.2d 302, 310 [240 P.2d 596].) Meaningfully applied, the right to counsel includes the opportunity to receive "effective aid in the preparation and trial of the case." [Citations.] To be sure, this right may be waived [citations], but *"a finding of waiver is not lightly to be made."* [Citation.] *"It has been pointed out that 'courts indulge every reasonable presumption against waiver'* of fundamental constitutional rights and that we *'do not presume acquiescence in the loss of fundamental rights.'* A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." [Citation.] These principles are "equally applicable to asserted waivers of the right to counsel in state criminal proceedings." [Citation.] Not only must the waiver be unqualified, but it may be made only by a defendant who has been apprised of his rights and who has "an intelligent conception of the consequences of his act." [Citation.]' "

Reference is made by the majority to a comment in a speech by the Right Honorable The Lord Diplock (presumably an observer from England) to the effect that sometimes our reviewing courts "seem at times to have adopted the principle of the irrelevancy of guilt." It is wholly unnecessary to travel abroad or any great distance for any such a view or observation. Some appellate court justices have repeatedly called attention to the trend (including the writer hereof), however, this is an intermediate appellate court and the law as written by the Supreme Court of the United States and the Supreme Court of California should be followed meticulously by this court. Otherwise, we promote, in effect, the philosophy that when attorneys are involved in criminal cases we operate under a different set of constitutional rules and interpretations. Uniformity in the application of constitutional rights and guarantees is an absolute necessity, if there is to be anything to the "rule of law." To follow the law so laid down does not necessarily indicate an agreement with such law but to do less is to encourage a rule of men.

I would reverse the judgment of conviction as to Cohen.

I concur in the reversal of the judgment as to Susan Cohen.

A petition for a rehearing was denied November 24, 1970, and the petition of appellant Theodore Cohen for a hearing by the Supreme Court was denied January 14, 1971.